JUDGE KATHLEEN CARDONE

FILED

2025 DEC -1  PM 1: 30

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | |
|---|---|
| ROY DAVIS,<br><br>   *Plaintiff,*<br><br>v.<br><br>COUNTY OF EL PASO, TEXAS,<br>RICARDO SAMANIEGO, JACKIE BUTLER,<br>ILIANA HOLGUIN, DAVID STOUT, SERGIO<br>CORONADO, JOHN E. UNTEREKER,<br>CHRISTINA SANCHEZ, AMY MONSIVAIS,<br>JAMES MONTOYA, MICHAEL SCHULTE,<br>RAYMUNDO HERNANDEZ, ALEXANDER<br>MIETLINSKI, EL PASO SHERIFF'S OFFICE,<br>EL PASO SHERIFF'S CIVIL SERVICE<br>COMMISSION, EL PASO COUNTY CIVIL<br>SERVICE COMMISSION, EL PASO COUNTY<br>COUNCIL OF JUDGES, YVONNE RODRIGUEZ,<br>MARLENE GONZALEZ,<br><br>   *Defendants* | § § § § § § § § § § § § § § § § § § § § §<br><br>**EP 25CV0599**<br><br>Case No. _____<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

(Non-Prisoner Complaint)

Plaintiff Roy Davis ("Davis") brings this action against Defendant the County of El

Paso, Texas ("County of El Paso") under 42 U.S.C. § 1983 and states as follows:

# I.
# PARTIES

1.      Plaintiff, Davis, is an individual and a resident of El Paso County, Texas, residing at 4943 Guadalupe Dr. El Paso, Texas 79904.

2.      Defendant, County of El Paso, is a governmental entity in the State of Texas upon which service may be obtained by serving the El Paso County Judge Ricardo Samaniego at 500 E. San Antonio, Suite 301, El Paso, Texas 79901, or wherever he may be found.

3.      Defendants: Ricardo Samaniego, Jackie Butler, Iliana Holguin, David Stout, Sergio Coronado, John E. Untereker, Christina Sanchez, Amy Monsivais, James Montoya, Michael Schulte, Raymundo Hernandez, Alexander Mietlinski, El Paso Sheriff's Office, El Paso Sheriff's Civil Service Commission, El Paso County Civil Service Commission, El Paso County Council of Judges, Yvonne Rodriguez, and Marlene Gonzalez are all parties that work in tandem with or are employed by El Paso County, Texas upon which service may be obtained by serving the El Paso County Judge Ricardo Samaniego at 500 E. San Antonio, Suite 301, El Paso, Texas 79901 or wherever he may be found.

# II.
# JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the actions arise under Title 42 of the United States Code.

5.      Venue is proper in the district under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Davis's claim occurred in this District.

### III.
### SUMMARY OF THE CASE

6.      Judge Marlene Gonzalez ("Gonzalez") despite her reputation amongst the
local legal community as a substandard attorney, managed to get elected to the
seat of district judge of the 388th District Court. Gonzalez's elevation to the bench and a
black robe only spotlighted her incompetence. A former judge and several attorneys
recognized Gonzalez's shortcomings almost immediately and subsequently reported
their concerns to the State Commission on Judicial Conduct (SCJC). Despite the grave
seriousness of the reported concerns of respected legal professionals, the SCJC, as
they typically do, declined to take any action thus leaving Gonzalez in power. During
her tenure, Gonzalez's performance continues to be dismal at best. Gonzalez lacks the
ability to serve as a judge and she routinely: starts hearings by calling the wrong case
and corresponding case numbers; fails to provide timely rulings after hearing her cases
and relies on her subordinate associate judge to advise and subsequently prepare her
orders; and routinely signs judicial orders on matters she does not adjudicate by
having a non-judicial subordinate employee perform her duty of holding
hearings on her behalf. Gonzalez consistently acts without thinking which often results
in complaints. On several occasions, Gonzalez ordered Davis to assist her with
technical writing such as: written responses to her judicial complaints and campaign
speeches when she sought reelection. Gonzalez exemplified her willingness to act
without thinking when she, in the absence of a bona fide emergency or without a
legitimate reason, pushed the panic button mounted on her bench causing the
emergency and unnecessary response of several law enforcement officers. Davis was one of the
responding officers and he reported the incident as a false alarm (criminal act) to co-respondent

law enforcement officer, Defendant Deputy Michael Schulte. It was later determined that Schulte ignored the felony, about which he was aware, by not taking any action to include completing a simple information report. Schulte instead chose to cover for Gonzalez, minimizing her felonious act to "no big deal." Defendant Lieutenant Raymundo Hernandez, aware of the incident, was derelict as Schulte's supervisor by failing to ensure the felonious incident was properly documented. Defendant El Paso Sheriff's Office ("EPSO") was systemically negligent as no individual within the agency, as the information of the incident went up the ranks, took any action whatsoever to ensure that a felony committed within their jurisdiction was properly documented and investigated. Their actions clearly illustrate that ignoring or covering up offenses committed by certain individuals is their agency policy or practice. Pursuant to Senate Bill 42 (2017) being a certified peace officer, trained and certified as a court security specialist (training recognized by El Paso County), Davis had the responsibility of filing an incident report with the Texas Office of Court Administration (OCA). Gonzalez threatened to terminate Davis's employment if he filed the mandated incident report, thus committing additional felonies by attempting to influence a peace officer to not report an incident to the proper authorities. Davis fulfilled his legal duty. Upon learning of the report being filed, Gonzalez, without due process, terminated Davis as an at-will employee when in fact, contrary to Gonzalez's termination letter, he was an employee with civil service protection.

7.    Defendant El Paso County Human Resources ("HR"), knew or should have known that Davis was an employee with civil service protection and not an at-will employee as indicated on their outdated paperwork. Defendant HR intentionally permitted the unauthorized termination of Davis. If unintentional, Defendant HR was negligent in not keeping abreast of changes within the departments they oversee.

8.      Defendants El Paso County Civil Service Commission ("EPCCSC") and
El Paso Sheriff Civil Service Commission ("EPSCSC") were aware or should have been aware
that Davis, as a certified peace officer, was not an at-will employee but was an employee with
civil service protection. Defendants EPCCSC and EPSCSC intentionally permitted the
unauthorized termination of Davis. If unintentional, Defendants were negligent in not keeping
abreast of changes within the departments they oversee.

9.      Defendant Alexander Mietlinski ("Mietlinski") and Defendant El Paso County
Council of Judges (EPCCOJ) formed a "police agency" within El Paso County (with a
population exceeding 10,000) in 2021. The agency identified itself as Council of Judges Agency
(COJA) which was duly registered with the Texas Commission on Law Enforcement (TCOLE)
and took on the trappings as a police agency by issuing to the bailiff's outerwear displaying the
word "Police." This change in status where El Paso County bailiffs operate under a police
agency vs. individual judge sponsorship was not reported to Defendants EPCCSC or EPSCSC.
Upon becoming a TCOLE Police Agency in 2021, COJA operating within a community with a
population of more than 10,000 failed to register with the appropriate local commission and
operate as an agency employing/sponsoring civil service protected officers (per Local
Government Code 143.002 – incorporated and herein referred to as Exhibit D.

10.     Davis reported the Gonzalez incident to the Texas Rangers for a thorough investigation
Of Gonzalez's criminal acts. The Texas Rangers completed an investigation and referred the case
to the El Paso District Attorney's Office. District Attorney Bill Hicks declined the case, referring
to Gonzalez's felonious actions as "no big deal."

11.     Davis initiated a civil lawsuit against the County of El Paso which was
assigned to the 384th District Court. After self-recusal of the presiding judge of the assigned

court, Defendant Yvonne Rodriguez ("Rodriguez") was appointed as the visiting judge to hear the case. Rodriguez, while serving as an agent of and being compensated by Defendant El Paso County was devoid of any ethical legal process and was a clear subterfuge to further the curated façade. Rodriguez, during a Plea to Jurisdiction hearing, acted outside the scope and immunity of the judiciary by intervening in the case by introducing case law, demanding plaintiff counsel to add a defendant, and demanding the defense counsel to amend their plea to fit her intervention. Under color of law, Defendants Assistant County Attorney John Untereker ("Untereker") and County Attorney Christina Sanchez (Sanchez) while in their official capacities, engaged in the act of racketeering with Rodriguez to unlawfully dismiss Davis's civil action by submitting to the court the Rodriguez-directed plea. Under color of law, Rodriguez, upon receiving her requested amended plea from the county attorney, unlawfully dismissed Davis's civil lawsuit with prejudice, violating his right to pursue justice. An order granting the El Paso County plea to jurisdiction was signed by Rodriguez and notices of judgment were disseminated. Rodriguez's actions are being investigated, and her order has since mysteriously disappeared. No evidence that the order has been vacated nor any recall of the notices of judgment exists. The actual status of the case is unknown as of the filing of this complaint. If it is claimed to be open, the unnecessary delay in justice is denying justice.

12.    After a change of District Attorney, Davis requested a reconsideration of the review of the criminal charges against Gonzalez from newly elected Defendant District Attorney James Montoya ("Montoya"). Another investigation was completed by the Texas Rangers and submitted to Montoya's office. Defendant Assistant District Attorney Amy Monsivais (Monsivais), in written correspondence, advised that her office chose to not pursue the criminal case against Gonzalez. No reason was given. Under color of law, Montoya and Monsivais, in

their official capacity, violated Davis's civil rights, denying his equal protection under the law as a victim of Gonzalez's actions.

13.    See attached affidavit for additional details.

**IV.**
**FACTS**

14.    Davis is a decorated career law enforcement officer with several decades of experience. He graduated from the El Paso Police Academy April 16, 1982 and served until his honorable retirement date of September 4, 2002.

15.    During his tenure with the El Paso Police Department, Davis worked a variety of assignments holding the ranks of Officer, Detective, Sergeant, Lieutenant, Captain, and Commander. Davis had nearly perfect attendance, exceed standards evaluations, numerous awards, and no incidents of deficiencies or discipline.

16.    Although retired, Davis maintained his peace officer license and worked court appointed cases as a private investigator.

17.    In 2015, Davis was hired by Honorable Judge Mike Herrera to work as a Court Bailiff for El Paso County. Davis brought into his new role, his police experience as a Dignitary Protection Officer. Davis continued growth in his new role by seeking out and completing available training and becoming one of a few Certified Court Security Specialists in 2018. Davis earned maximum ratings on annual performance evaluations resulting in all available meritorious pay increases. At the conclusion of Judge Herrera's judicial career in December 2020, Gonzalez hired Davis to be her bailiff after heavily recruiting him. Davis continued earning maximum performance ratings and meritorious pay increases from Gonzalez. Davis's tenure as an El Paso County Bailiff mirrored his first career with near perfect attendance and no incidents of deficiencies or discipline.

18.     Davis's work record was stellar.

19.     Gonzalez activates her panic alarm without legitimate reason and then orders

Davis to violate his oath office (administered by Gonzalez in January 2021) and not fulfil his

duties as a peace officer certified as a court security specialists or be fired. Davis already

reported the incident to law enforcement officer Michael Schulte immediately following the

event. Davis fulfilled his duty and was subsequently wrongfully terminated by Gonzalez,

violating his rights as a civil service protected employee.

20.     The wrongful termination has damaged Davis's reputation as he has applied

for several comparable positions with zero employment offerings.

21.     The entire government of El Paso County, headed by Defendants County Judge

Ricardo Samaniego, Commissioner Jackie Butler, Commissioner Iliana Holguin, Commissioner

David Stout and Commissioner Sergio Coronado, operate as a unified agency

comprised of several individual departments staffed by the named defendants engaged in the

covering up of misfeasance, nonfeasance, and malfeasance for themselves or other departments.

A coordinated conspiracy to oppress Davis was orchestrated and carried out. Davis's race is

Black, classifying him as belonging to a protected class of the population. Davis, pursuant to his

employment position, should have also fallen under the protection of civil service.  All of Davis's

guaranteed rights were violated. Davis alleges those violations to have occurred because of his

race as due process is typically exercised in similar situations involving his Caucasian

counterparts.  Davis's maltreatment based on his race is the only conclusion that can be

reasonably reached. The elements and evidence described herein establish actions by multiple

officials who acted under color of law, committing multiple violations under Title 42 U.S.C. §

1983 resulting in multiple examples of damages in the form of deprivation and/or interference with Davis's constitutionally protected civil rights.

## V.
## COUNT ONE

### CIVIL ACTION UNDER 42 U.S.C. § 1983 FOR THE DEPRIVATION OF RIGHTS AFFORDED UNDER THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION

22.     Davis incorporates all allegations in the previous paragraphs as if fully set forth herein.

23.     Davis was employed by El Paso County as a Court Bailiff (commissioned peace officer sponsored by the Council of Judges Law Enforcement Agency) when the events that are the subject of this claim transpired. Davis was a peace officer sponsored by a police agency duly licensed by the Texas Commission on Law Enforcement (TCOLE) with said agency operating within a community with a population of more than 10,000 and thus had civil service protection (see exhibits A, B, C, and D).

24.     Davis performed his duties as a peace officer by properly reporting a felonious crime to the appropriate authorities (sheriff's office deputy immediately following the initial act and to court administration within the prescribed 72 hours), refusing to participate in an illegal scheme intended to protect Gonzalez.

25.     Days following Davis's refusal to cover up Gonzalez's crime and subsequent report to Office of Court Administration, he was wrongfully terminated by Gonzalez, misclassified as an at-will employee and without the benefit of the due process that should have been afforded to him as a civil service employee.

26.     Davis suffered monetary damages and reputational damages as a result of

wrongful and retaliatory termination, including lost wages including back pay, future lost earnings and benefits, out-of-pocket damages, damages to property, mental anguish damages including damages for physical and emotional pain and suffering, and damages for impairment of reputation, personal humiliation, and out of pocket losses.

## VI.
## DAMAGES

27.   Davis seeks actual damages, compensatory damages, back pay, front pay and/or lost wages in the past and future, all actual monetary damages, mental anguish damages including damages for physical and emotional pain and suffering, damages for impairment of reputation, personal humiliation, and out of pocket losses, liquidated damages, exemplary damages, attorney's fees, expert witness fees, court costs, pre-judgment interest, post-judgment interest, and all other and further legal and equitable relief to which he is entitled.

28.   Davis also seeks punitive damages due to the County of El Paso's reckless or callous indifference towards Davis's federally protected rights.

29.   Davis further seeks exemplary damages in view of the facts set forth herein and those that are a matter of public record, which demonstrate outrageous, malicious, and morally culpable conduct.

## VII.
## JURY DEMAND

30.   Davis demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Davis requests entry of judgment in his favor and against the County of El Paso as follows:

A finding that Davis's termination was wrongful, retaliatory, and in violation of his 5th and 14th Amendment Rights.

An award of actual damages, compensatory damages, backpay, front pay and/or lost wages in the past and future, all actual monetary damages, mental anguish damages including damages for physical and emotional pain and suffering, damages for impairment of reputation, personal humiliation, and out of pocket losses, liquidated damages, exemplary damages, attorney's fees, expert witness fees, court costs, and pre- and post-judgment interest. Such other and further relief, whether legal, equitable, or otherwise, to which Davis may be entitled or which this Court may order.

Dated December 1, 2025

Respectfully submitted,

Roy Davis
Pro Se Litigant
4943 Guadalupe Dr.
El Paso, Texas 79904
Telephone: (915) 630-5597
Email: advocate.tex@gmail.com

*EXHIBIT A*

# TEXAS SENATE BILL 42

## JUDGE JULIE KOCUREK JUDICIAL AND COURTHOUSE SECURITY ACT OF 2017

AN ACT relating to the security of courts and judges in the state; establishing a fee.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

**SECTION 1.** This Act may be cited as the Judge Julie Kocurek Judicial and Courthouse Security Act of 2017.

**SECTION 2.** Article 102.017(f), Code of Criminal Procedure, is amended to read as follows:
(f) The sheriff, constable, or other law enforcement agency or entity that provides security for a court shall provide to the Office of Court Administration of the Texas Judicial System a written report regarding any security incident involving court security that occurs in or around a building housing a court for which the sheriff, constable, agency, or entity provides security not later than the third business day after the date the incident occurred. A copy of the report must be provided to the presiding judge of the court in which the incident occurred. The report is confidential and exempt from disclosure under Chapter 552, Government Code.

**SECTION 3.** Subchapter A, Chapter 29, Government Code, is amended by adding Section 29.014 to read as follows:

Sec. 29.014. COURT SECURITY COMMITTEE. (a) The presiding or municipal judge, as applicable, shall establish a court security committee composed of:
(1) the presiding or municipal judge, or the judge's designee;
(2) a representative of the law enforcement agency or other entity that provides the primary security for the court;
(3) a representative of the municipality; and
(4) any other person the committee determines necessary to assist the committee.
(b) The person described by Subsection (a)(1) serves as presiding officer of the committee.
(c) The committee shall establish the policies and procedures necessary to provide adequate security to the municipal courts served by the presiding or municipal judge, as applicable.
(d) A committee may recommend to the municipality the uses of resources and expenditures of money for courthouse security, but may not direct the assignment of those resources or the expenditure of those funds.

1

**SECTION 4.** Section 30.00007, Government Code, is amended by amending Subsection (b) and adding Subsection (c) to read as follows:

(b)  The presiding judge shall:

(1)  maintain a central docket for cases filed within the territorial limits of the municipality over which the municipal courts of record have jurisdiction;

(2)  provide for the distribution of cases from the central docket to the individual municipal judges to equalize the distribution of business in the courts;

(3)  request the jurors needed for cases that are set for trial by jury;

(4)  temporarily assign judges or substitute judges to exchange benches and to act for each other in a proceeding pending in a court if necessary for the expeditious disposition of business in the courts;

(5)  supervise and control the operation and clerical functions of the administrative department of each court, including the court's personnel, during the proceedings of the court; and

(6)  establish a court security committee to adopt security policies and procedures for the courts served by the presiding judge that is composed of:

(A)  the presiding judge, or the presiding judge's designee, who serves as presiding officer of the committee;

(B)  a representative of the law enforcement agency or other entity that provides the primary security for the court;

(C)  a representative of the municipality; and

(D)  any other person the committee determines necessary to assist the committee.

(c)  A court security committee may recommend to the governing body the uses of resources and expenditures of money for courthouse security, but may not direct the assignment of those resources or the expenditure of those funds.

**SECTION 5.** Chapter 51, Government Code, is amended by adding Subchapter N to read as follows:

**SUBCHAPTER N. ADDITIONAL FILING FEE FOR JUDICIAL AND COURT PERSONNEL TRAINING**

Sec. 51.971.  JUDICIAL AND COURT PERSONNEL TRAINING FEE.

(a)  In addition to other fees authorized or required by law, the clerk of a district court, county court, statutory county court, statutory probate court, or justice court shall collect a $5 fee on the filing of any civil action or proceeding requiring a filing fee, including an appeal, and on the filing of any counterclaim,

cross-action, intervention, interpleader, or third party action requiring a filing fee to be used as provided under Section 56.003.
(b)  A court may waive payment of a fee due under this section for an individual the court determines is indigent.
(c)  Fees due under this section shall be collected in the same manner as other fees, fines, or costs in the case.
(d)  The clerk of a district court, county court, statutory county court, statutory probate court, or justice court shall deposit the court costs and fees collected under this section in the appropriate local treasury and remit the court costs and fees to the comptroller in the manner provided under Subchapter B, Chapter 133, Local Government Code.
(e)  The comptroller shall deposit the fees received under this section to the credit of the judicial and court personnel training fund established under Section 56.001.
(f)  The comptroller may audit the records of a county related to costs and fees collected under this section.
(g)  Money spent from costs and fees collected under this section is subject to audit by the state auditor.

**SECTION 6.**  Section 56.003, Government Code, is amended by adding Subsection (h) to read as follows:
(h)  The court of criminal appeals shall grant legal funds to statewide professional associations and other entities that provide training to individuals responsible for providing court security.

**SECTION 7.**  Section 56.004(b), Government Code, is amended to read as follows:
(b)  The legislature shall appropriate funds from the judicial and court personnel training fund to the court of criminal appeals to provide for:
(1)  continuing legal education, technical assistance, and other support programs for prosecuting attorneys and their personnel, criminal defense attorneys who regularly represent indigent defendants in criminal matters and their personnel, and justices of the peace and their court personnel; (2)  innocence training programs for law enforcement officers, law students, and other participants; and
(3)  court security training programs for individuals responsible for providing court security.

**SECTION 8.**  Subchapter B, Chapter 72, Government Code, is amended by adding Sections 72.015 and 72.016 to read as follows:

3

Sec. 72.015.  JUDICIAL SECURITY DIVISION. (a)  The office shall establish a judicial security division to provide guidance to state court personnel on improving security for each court.
(b)  The office shall appoint a director of security and emergency preparedness to oversee the judicial security division.
(c)  The judicial security division shall:
(1)  serve as a central resource for information on local and national best practices for court security and the safety of court personnel;
(2)  provide an expert opinion on the technical aspects of court security; and
(3)  keep abreast of and provide training on recent court security improvements.

Sec. 72.016.  NOTIFICATION PROCEDURE FOR JUDICIAL PRIVACY.
The director shall develop a procedure to regularly notify county registrars, the Department of Public Safety, the Texas Ethics Commission, and any other state agency the office determines should be notified of the judges, judges' spouses, and related family members whose personal information must be kept from public records, as provided under Sections 552.117 and 572.035 of this code, Sections 13.0021 and 15.0215, Election Code, and Section 521.121, Transportation Code.

**SECTION 9.**  Section 74.092, Government Code, is amended to read as follows:

Sec. 74.092.  DUTIES OF LOCAL ADMINISTRATIVE JUDGE. (a)  A local administrative judge, for the courts for which the judge serves as local administrative judge, shall:
(1)  implement and execute the local rules of administration, including the assignment, docketing, transfer, and hearing of cases;
(2)  appoint any special or standing committees necessary or desirable for court management and administration;
(3)  promulgate local rules of administration if the other judges do not act by a majority vote;
(4)  recommend to the regional presiding judge any needs for assignment from outside the county to dispose of court caseloads;
(5)  supervise the expeditious movement of court caseloads, subject to local, regional, and state rules of administration;
(6)  provide the supreme court and the office of court administration requested statistical and management information;
(7)  set the hours and places for holding court in the county;
(8)  supervise the employment and performance of nonjudicial personnel;

4

(9)  supervise the budget and fiscal matters of the local courts, subject to local rules of administration;

(10)  coordinate and cooperate with any other local administrative judge in the district in the assignment of cases in the courts ' concurrent jurisdiction for the efficient operation of the court system and the effective administration of justice;

(11)  if requested by the courts the judge serves, establish and maintain the lists required by Section 37.003 and ensure appointments are made from the lists in accordance with Section 37.004;

(12)  perform other duties as may be directed by the chief justice or a regional presiding judge; and

(13)  establish a court security committee to adopt security policies and procedures for the courts served by the local administrative district judge that is composed of:

(A)  the local administrative district judge, or the judge's designee, who serves as presiding officer of the committee;

(B)  a representative of the sheriff's office;

(C)  a representative of the county commissioners court;

(D)  one judge of each type of court in the county other than a municipal court or a municipal court of record;

(E)  a representative of any county attorney's office, district attorney's office, or criminal district attorney's office that serves in the applicable courts; and

(F)  any other person the committee determines necessary to assist the committee.

(b)  A court security committee may recommend to the county commissioners court the uses of resources and expenditures of money for courthouse security, but may not direct the assignment of those resources or the expenditure of those funds.

**SECTION 10.**  Subchapter D, Chapter 101, Government Code, is amended by adding Section 101.06111 to read as follows:

Sec. 101.06111.  ADDITIONAL DISTRICT COURT FEES: GOVERNMENT CODE. The clerk of a district court shall collect an additional filing fee of $5 under Section 51.971 in civil cases to fund judicial and court personnel training.

**SECTION 11.**  Subchapter E, Chapter 101, Government Code, is amended by adding Section 101.08111 to read as follows:

Sec. 101.08111.  ADDITIONAL STATUTORY COUNTY COURT FEES: GOVERNMENT CODE. The clerk of a statutory county court shall collect an additional filing fee of $5 under Section 51.971 in civil cases to fund judicial and court personnel training.

5

**SECTION 12.** Subchapter F, Chapter 101, Government Code, is amended by adding Section 101.10111 to read as follows:

Sec. 101.10111. ADDITIONAL STATUTORY PROBATE COURT FEES: GOVERNMENT CODE. The clerk of a statutory probate court shall collect an additional filing fee of $5 under Section 51.971 in civil cases to fund judicial and court personnel training.

**SECTION 13.** Subchapter G, Chapter 101, Government Code, is amended by adding Section 101.12121 to read as follows:

Sec. 101.12121. ADDITIONAL COUNTY COURT FEES: GOVERNMENT CODE. The clerk of a county court shall collect an additional filing fee of $5 under Section 51.971 in civil cases to fund judicial and court personnel training.

**SECTION 14.** Subchapter H, Chapter 101, Government Code, is amended by adding Section 101.1411 to read as follows:

Sec. 101.1411. ADDITIONAL JUSTICE COURT FEES: GOVERNMENT CODE. The clerk of a justice court shall collect an additional filing fee of $5 under Section 51.971 in civil cases to fund judicial and court personnel training.

**SECTION 15.** Subtitle L, Title 2, Government Code, is amended by adding Chapter 158 to read as follows:

**CHAPTER 158. COURT SECURITY OFFICERS**

Sec. 158.001. DEFINITION. In this chapter, "court security officer" means a constable, sheriff, sheriff's deputy, municipal peace officer, or any other person assigned to provide security for an appellate, district, statutory county, county, municipal, or justice court in this state.

Sec. 158.002. COURT SECURITY CERTIFICATION. (a) Except as provided by Subsection (b), a person may not serve as a court security officer for an appellate, district, statutory county, county, municipal, or justice court in this state unless the person holds a court security certification issued by a training program approved by the Texas Commission on Law Enforcement.

(b) A court security officer is not required to hold a court security certification to provide security to a court described by Subsection (a) before the first anniversary of the date the officer begins providing security for the court.

6

**Sec. 158.003.** VERIFICATION. The sheriff, constable, law enforcement agency, or other entity that provides security for a court shall verify that each court security officer holds the court security certification as required by this chapter.

**SECTION 16.** Subchapter D, Chapter 411, Government Code, is amended by adding Section 411.0485 to read as follows:

**Sec.** 411.0485. PROTECTION FOR JUDGES. Any commissioned peace officer in this state, including a commissioned officer of the department, may provide personal security to a state judge at any location in this state, regardless of the location of the law enforcement agency or department that employs or commissions the peace officer.

**SECTION 17.** Section 552.117(a), Government Code, is amended to read as follows:

(a) Information is excepted from the requirements of Section 552.021 if it is information that relates to the home address, home telephone number, emergency contact information, or social security number of the following person or that reveals whether the person has family members:
(1) a current or former official or employee of a governmental body, except as otherwise provided by Section 552.024;
(2) a peace officer as defined by Article 2.12, Code of Criminal Procedure, or a security officer commissioned under Section 51.212, Education Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;
(3) a current or former employee of the Texas Department of Criminal Justice or of the predecessor in function of the department or any division of the department, regardless of whether the current or former employee complies with Section 552.1175;
(4) a peace officer as defined by Article 2.12, Code of Criminal Procedure, or other law, a reserve law enforcement officer, a commissioned deputy game warden, or a corrections officer in a municipal, county, or state penal institution in this state who was killed in the line of duty, regardless of whether the deceased complied with Section 552.024 or 552.1175;
(5) a commissioned security officer as defined by Section 1702.002, Occupations Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;
(6) an officer or employee of a community supervision and corrections department established under Chapter 76 who performs a duty described by Section 76.004(b), regardless of whether the officer or employee complies with Section 552.024 or 552.1175;

7

(7)   a current or former employee of the office of the attorney general who is or was assigned to a division of that office the duties of which involve law enforcement, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(8)   a current or former employee of the Texas Juvenile Justice Department or of the predecessors in function of the department, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(9)   a current or former juvenile probation or supervision officer certified by the Texas Juvenile Justice Department, or the predecessors in function of the department, under Title 12, Human Resources Code, regardless of whether the current or former officer complies with Section 552.024 or 552.1175;

(10)   a current or former employee of a juvenile justice program or facility, as those terms are defined by Section 261.405, Family Code, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(11)   a current or former member of the Texas military forces, as that term is defined by Section 437.001;

(12)   a current or former federal judge or state judge, as those terms are defined by Section 13.0021(a), Election Code, or a spouse of a current or former federal judge or state judge; or

(13)   a current or former district attorney, criminal district attorney, or county attorney whose jurisdiction includes any criminal law or child protective services matter.

**SECTION 18.**   Section 572.002, Government Code, is amended by adding Subdivision (11-a) to read as follows: (11-a)  "State judge" means:

(A)   a judge, former judge, or retired judge of an appellate court, a district court, a constitutional county court, a county court at law, or a statutory probate court of this state;

(B)   an associate judge appointed under Chapter 201, Family Code, or a retired associate judge or former associate judge appointed under that chapter;

(C)   a magistrate or associate judge appointed under Chapter 54 or 54A;

(D)   a justice of the peace; or (E) a municipal court judge.

**SECTION 19.**   Subchapter B, Chapter 572, Government Code, is amended by adding Section 572.035 to read as follows:

Sec. 572.035.   REMOVAL OF PERSONAL INFORMATION FOR FEDERAL JUDGES, STATE JUDGES, AND SPOUSES. On receiving notice from the Office of Court Administration of the Texas Judicial System of the judge's qualification for the judge's office, the commission shall remove

or redact from any financial statement, or information derived
from a financial statement, that is available to the public the
residence address of a federal judge, a state judge, or the spouse
of a federal or state judge.

**SECTION 20.** Section 13.0021(a)(2), Election Code, is amended to
read as follows:
(2)  "State judge" means:
(A)  a judge, former judge, or retired judge of an appellate court,
a district court, a constitutional county court, a county court at
law, or a statutory probate court of this state;
(B)  an associate judge appointed under Chapter 201, Family Code,
or a retired associate judge or former associate judge appointed
under that chapter;
(C)  a magistrate or associate judge appointed under Chapter 54 or
54A, Government Code;
(D)  a justice of the peace; or
(E)  a municipal court judge.

**SECTION 21.** Section 13.0021(b), Election Code, is amended to read
as follows:
(b)  If the registration applicant is a federal judge, a state
judge, or the spouse of a state judge or a federal judge, the
registrar of the county shall omit the applicant's residence
address from the registration list.

**SECTION 22.** Section 15.0215, Election Code, is amended to read as
follows:

Sec. 15.0215.  OMISSION OF ADDRESS FOR FEDERAL JUDGE OR STATE
JUDGE AND SPOUSE. (a)  In this section, "federal judge" and "state
judge" have the meanings assigned by Section 13.0021.
(b)  On receiving notice from the Office of Court Administration
of the Texas Judicial System of the person's qualification for
office as a federal judge or state judge and of the name of the
judge's spouse, if applicable, the registrar of the county in which
the judge resides shall omit from the registration list the
residence address of the judge and the spouse of the judge.
(c)  A registered district voter who wishes to verify that an
elected judge whose personal identifying information is
confidential under Section 552.1175, Government Code, resides in
the district may request in writing that the registrar certify the
judge lives in the district. The registrar shall exercise due
diligence in determining the residence of the judge and respond to
the voter in writing not later than the 10th business day after
the date the request is received on whether the judge resides in
the district.  The registrar may not release the address of the

9

judge.  The registrar is not required to certify the residence of the same judge more than once in a calendar year, but must provide copies of the certification to subsequent requestors.

**SECTION 23.**  Section 133.058(d), Local Government Code, is amended to read as follows:
(d)  A county may not retain a service fee on the collection of a fee:
(1)  for the judicial fund;
(2)  under Article 42A.303 or 42A.653, Code of Criminal Procedure;
(3)  under Section 51.851, Government Code; or
(4)  under Section 51.971, Government Code.

**SECTION 24.**  Subchapter F, Chapter 1701, Occupations Code, is amended by adding Section 1701.267 to read as follows:

Sec. 1701.267.  TRAINING PROGRAM FOR COURT SECURITY OFFICERS.
(a)  The commission, in consultation with the Office of Court Administration of the Texas Judicial System, shall develop a model court security curriculum for court security officers, as required by Chapter 158, Government Code, and provide the curriculum to any training program the commission approves to provide training to court security officers.
(b)  The commission shall issue a certificate to each court security officer who completes the training program under this section.

**SECTION 25.**  Section 11.008, Property Code, is amended by adding Subsection (j) to read as follows:
(j)  On receipt of a written request from a federal judge, state judge as defined by Section 572.002, Government Code, or spouse of a federal or state judge, the county clerk shall omit or redact from an instrument described by this section that is available in an online database made public by the county clerk, or by a provider with which the county commissioners court contracts to provide the online database, social security number, driver's license number, and residence address of the federal judge, state judge, or spouse of the federal or state judge.

**SECTION 26.**  Section 25.025(b), Tax Code, is amended to read as follows:
(b)  Information in appraisal records under Section 25.02 is confidential and is available only for the official use of the appraisal district, this state, the comptroller, and taxing units and political subdivisions of this state if:
(1)  the information identifies the home address of a named individual to whom this section applies; and

10

(2)  the individual:

(A)  chooses to restrict public access to the information on the form prescribed for that purpose by the comptroller under Section 5.07; or

(B)  is a federal or state judge as defined by Section 572.002, Government Code, or the spouse of a federal or state judge, beginning on the date the Office of Court Administration of the Texas Judicial System notifies the appraisal district of the judge's qualification for the judge's office.

**SECTION 27.**  Section 521.121(c), Transportation Code, is amended to read as follows:

(c)  The department shall establish a procedure, on a license holder's qualification for office as a federal or state judge as defined by Section 572.002, Government Code, to omit the residence address of the judge and the spouse of the judge on the license holder's license and to include, in lieu of that address, the street address of the courthouse in which the license holder or license holder 's spouse serves as a federal judge or state judge.

**SECTION 28.**  (a)  Not later than January 1, 2018, the Office of Court Administration of the Texas Judicial System, the Department of Public Safety, the Texas Ethics Commission, each county clerk, each registrar, and any other county official responsible for county records shall establish the policies and procedures necessary to comply with the changes in law made by this Act.

(b)  As soon as practicable after the effective date of this Act:

(1)  the Office of Court Administration of the Texas Judicial System shall establish the judicial security division; and

(2)  each judge required to establish a court security committee under this Act shall establish the committee.

**SECTION 29.**  Section 51.607, Government Code, does not apply to the imposition of a fee assessed under Section 51.971(a), Government Code, as added by this Act.

**SECTION 30.**  A person serving as a court security officer as defined under Section 158.001, Government Code, as added by this Act, on the effective date of this Act is not required to receive the certification required under Section 158.002, Government Code, as added by this Act, before September 1, 2019.

**SECTION 31.**  This Act takes effect September 1, 2017.

11

_____          _____
President of the Senate                       Speaker of the House


I hereby certify that S.B. No. 42 passed the Senate on
April 4, 2017, by the following vote: Yeas 26, Nays 5; and that
the Senate concurred in House amendment on May 22, 2017, by the
following vote: Yeas 26, Nays 5.



_____
        Secretary of the Senate


I hereby certify that S.B. No. 42 passed the House, with amendment,
on May 17, 2017, by the following vote: Yeas 140, Nays 3, two
present not voting.



_____
        Chief Clerk of the House



Approved:
_____
                Date



_____
                Governor

GOVERNMENT CODE

TITLE 2. JUDICIAL BRANCH    *EXHIBIT B*

SUBTITLE L.  COURT PROFESSIONS REGULATION

CHAPTER 158.  COURT SECURITY OFFICERS

Sec. 158.001.  DEFINITION.  In this chapter, "court security officer" means a constable, sheriff, sheriff's deputy, municipal peace officer, or any other person assigned to provide security for an appellate, district, statutory county, county, municipal, or justice court in this state.

Added by Acts 2017, 85th Leg., R.S., Ch. 190 (S.B. 42), Sec. 15, eff. September 1, 2017.

Sec. 158.002.  COURT SECURITY CERTIFICATION. (a)  Except as provided by Subsection (b), a person may not serve as a court security officer for an appellate, district, statutory county, county, municipal, or justice court in this state unless the person holds a court security certification issued by a training program approved by the Texas Commission on Law Enforcement.

(b)  A court security officer is not required to hold a court security certification to provide security to a court described by Subsection (a) before the first anniversary of the date the officer begins providing security for the court.

Added by Acts 2017, 85th Leg., R.S., Ch. 190 (S.B. 42), Sec. 15, eff. September 1, 2017.

Sec. 158.003.  VERIFICATION.  The sheriff, constable, law enforcement agency, or other entity that provides security for a court shall verify that each court security officer holds the court security certification as required by this chapter.

Added by Acts 2017, 85th Leg., R.S., Ch. 190 (S.B. 42), Sec. 15, eff. September 1, 2017.



**TEXAS ADMINISTRATIVE CODE: As in effect on 10/26/2025.**

**TITLE 37. PUBLIC SAFETY AND CORRECTIONS**

**PART 7. TEXAS COMMISSION ON LAW ENFORCEMENT**

**CHAPTER 221. PROFICIENCY CERTIFICATES**

**§221.41. Court Security Specialist Certificate.**

(a) To qualify for a court security specialist certificate, an applicant must meet all proficiency requirements, including:

    (1) be a licensed peace officer or jailer; and

    (2) successful completion of commission approved courses.

(b) A certificate is valid for two years.

(c) To keep the certificate valid, the holder must successfully complete an update course or be assigned primarily as a court security practitioner by the appointing chief administrator once every two years.

(d) If the certificate becomes invalid, a holder may obtain a new certificate under the application standards in this section.

(e) The effective date of this section is May 2, 2013.

EXHIBIT D

LOCAL GOVERNMENT CODE

TITLE 5. MATTERS AFFECTING PUBLIC OFFICERS AND EMPLOYEES

SUBTITLE A. MUNICIPAL OFFICERS AND EMPLOYEES

CHAPTER 143.  MUNICIPAL CIVIL SERVICE FOR FIREFIGHTERS AND POLICE OFFICERS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 143.001.  PURPOSE.  (a)  The purpose of this chapter is to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants.

(b)  The members of the Fire Fighters' and Police Officers' Civil Service Commission shall administer this chapter in accordance with this purpose.

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.


Sec. 143.002.  MUNICIPALITIES COVERED BY CHAPTER.  (a)  This chapter applies only to a municipality:

(1)  that:

(A)  has a population of 10,000 or more;

(B)  has a paid fire department or police department; and

(C)  has voted to adopt this chapter or the law codified by this chapter; or

(2)  whose election to adopt this chapter and whose acts subsequent to that election were validated by the law enacted by House Bill 822, Acts of the 73rd Legislature, Regular Session, 1993.

(b)  Population under Subsection (a)(1) is determined by the most recent:

(1)  federal decennial census; or

(2)  annual population estimate provided by the state demographer under Chapter 468, Government Code, if that estimate is more recent than the most recent federal decennial census.

(c)  If this chapter applies to a municipality as provided by Subsection (a), the application of this chapter to the municipality is not affected if the municipality's population changes and the municipality no longer meets the population requirement of Subsection (a)(1).

Acts 1987, 70th Leg., ch. 149, Sec. 1, eff. Sept. 1, 1987.  Amended by Acts 1993, 73rd Leg., ch. 576, Sec. 1, eff. Aug. 30, 1993.

Amended by:

    Acts 2005, 79th Leg., Ch. 212 (H.B. 1913), Sec. 1, eff. May 27, 2005.

    Acts 2005, 79th Leg., Ch. 1163 (H.B. 3409), Sec. 1, eff. June 18, 2005.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

El Paso Area Office
100 N. Stanton Street, Suite 600
El Paso, TX 79901
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/25/2025

**To:** Mr. Roy L. Davis
4943 Guadalupe Dr
El Paso, TX 79904

Charge No: 453-2026-00139

EEOC Representative and email:    Al Valdez
Investigator
Alvaro.Valdez@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 453-2026-00139.

On behalf of the Commission,

Digitally Signed By:Elizabeth Porras
11/25/2025

Elizabeth Porras
Area Office Director

**Cc:**
County of El Paso/ HR Department
500 E. San Antonio Ave. RM. 503
El Paso, TX 79901

Jed Untereker
County of El Paso
320 S. Campbell St Rm. 200
El Paso, TX 79901

Please retain this Notice for your records.

# AFFIDAVIT

**Involvement of Judge Marlene Gonzalez in the Complaint Process and Related Investigations**

Judge Laura Strathman, the previous incumbent of the court, became involved in matters before the Texas Bar and the State Commission on Judicial Conduct as a result of complaints filed against Judge Marlene Gonzalez of the 388th District Court. In response to these complaints, extensive efforts were undertaken—often after regular working hours and on weekends—with the assistance of Associate Judge James Lucas, to prepare responses and answers addressing the allegations against Judge Gonzalez.

Judge Gonzalez required additional support from my personal private investigating company. She specifically requested an audit of her personal phone and the computers used in her law office. The purpose of this audit was to demonstrate that she had no association with Dennis Lee, the individual responsible for creating a fake website intended to harm the reputation of incumbent Judge Laura Strathman.

However, during the course of the investigation, it became evident—based on Judge Gonzalez's own admissions—that she had several telephonic communications with Mr. Lee. These communications were conducted using an untraceable prepaid cell phone. Furthermore, Judge Gonzalez disclosed that the cell phone in question was registered under the name of Nelson Font, who is both her nephew and an employee at her law firm.

In her official response to the Texas Bar and the State Commission on Judicial Conduct, Judge Marlene Gonzalez denied these facts. Nevertheless, the investigation determined

1

otherwise, and Judge Gonzalez ultimately received a reprimand and a fine for her involvement in this activity.

**Complaint by Attorney Doris Sipes Against Judge Marlene Gonzalez**

Attorney Doris Sipes filed a formal complaint against Judge Marlene Gonzalez, alleging that Judge Gonzalez rendered a decision in a case without reviewing or considering the evidence presented. In this instance, Judge Gonzalez obtained a copy of the trial transcript from a proceeding in which Doris Sipes was involved; the original hearing on the matter had been presided over by Judge Laura Strathman. Nevertheless, Judge Gonzalez proceeded to make a ruling and committed an error that, according to Sipes, was so apparent that even a layperson would have recognized it as a mistake.

Beyond this incident, Attorney Sipes accused Judge Gonzalez of several additional violations spanning multiple years, asserting these issues as evidence of Judge Gonzalez's lack of fitness for judicial office. Sipes aimed to demonstrate a pattern of poor judgment and a general disregard for basic judicial procedures.

In response to the complaint, Davis, together with Associate Judge James Lucas, was required by Judge Gonzalez to dedicate numerous hours after regular working hours and on weekends to conduct research and prepare Judge Gonzalez's response to the State Commission on Judicial Conduct (SCJC) complaint. When questioned about her lack of participation in the after-hours and weekend work related to her defense, Judge Gonzalez explained that "English is not my first language."

Attempting to remedy the situation prior to formally responding to the SCJC complaint, Judge Gonzalez chose to vacate her initial ruling and transferred the case to another

2

court. Subsequently, in her official answer to the SCJC, Judge Gonzalez misrepresented the events, characterizing her actions as an honest mistake.

### Allegations of Toxic Work Environment, Favoritism, and Retaliatory Actions

Judge Marlene Gonzalez was repeatedly accused of fostering, permitting, and actively participating in a toxic work environment within the 388th District Court. Her leadership was characterized by incidents of favoritism, discriminatory conduct, and derogatory personal attacks directed at both staff and practicing attorneys. Examples of her unprofessional behavior included the use of offensive language—such as calling individuals "fat," "stupid," or "old"—and making demeaning references toward Davis by referring to him as "her BOY."

Such conduct prompted several attorneys to file motions seeking Judge Gonzalez's recusal from their cases, citing her lack of professionalism and impartiality. One notable example involved Attorney Joy Degenhart, who found herself repeatedly obstructed in her efforts to secure a hearing for her client. Despite persistent attempts, Degenhart was denied the opportunity to fulfill her duties as an officer of the court, which led to significant delays in justice for her client.

Attorney Degenhart went to great lengths to address and resolve the situation, including making a personal visit to the courthouse. Upon her arrival, she was confronted by Judge Gonzalez's secretary, a non-attorney, who informed Degenhart that her hearing would not be scheduled due to alleged filing outside the limitations of the family code. The secretary, acting without a law license, was regularly accused of interfering in legal matters and impeding access to justice for the citizens of El Paso. When Degenhart

3

requested that Judge Gonzalez personally provide an explanation for the delay, the secretary became irate and ultimately expelled Degenhart from the public court lobby.

This incident became a catalyst for Degenhart, motivating her to run for Judge Gonzalez's judicial seat in the upcoming election. During her campaign, Degenhart publicly highlighted Judge Gonzalez's shortcomings and perceived incompetence on the bench. In apparent retaliation, Judge Gonzalez filed a Texas Bar Complaint against Degenhart's law license. The preparation of this voluminous complaint required Davis and Associate Judge James Lucas to dedicate extensive after-hours and weekend work, with some periods involving 16-hour workdays and additional 16 to 18-hour shifts on weekends, all without compensation.

### Assumption of Excess Caseload and Court Resource Strain

Judge Marlene Gonzalez voluntarily accepted a significant increase in workload without properly assessing the resources available to her court. At the time, Judge Lyda Ness Garcia of the 383rd District Court was facing a backlog in her docket and petitioned for a two-month period during which the 383rd District Court would not receive any new case assignments. Gonzalez agreed to take on these unassigned cases, despite the fact that the 388th District Court operated with a smaller staff and lacked the capacity to efficiently manage the additional caseload.

To address the influx of cases, Davis and Associate Judge James Lucas devised an action plan aimed at managing the heightened workload. Recognizing the need for additional support, they reached out to Human Resources via email to request volunteers; however, their request went unanswered. Ultimately, two volunteers were

found independently. Both individuals passed federal background checks and assisted for three months, successfully helping to clear 85 of the 120 cases involving pro se filers.

The short-term plan was considered successful, prompting the HR interim director to contact Judge Gonzalez about the initiative with the intention of implementing and expanding the model countywide. Despite this, Gonzalez denied ever having volunteers in her court, swearing that no such plan or volunteers had existed.

**Court Culture of Favoritism and Disparate Treatment of Attorneys**

The culture within Gonzalez's court was marked by favoritism, resulting in disparate treatment of certain attorneys. Some attorneys experienced poor communication from the court, including unanswered emails, ignored hearing requests, unreturned phone calls, and being placed on hold for extended periods until they eventually hung up. These attorneys also faced unfavorable or delayed rulings.

An illustrative example involved clients of the Divorce Clinic of El Paso, operated by Kenneth Laflamme. When cases related to the clinic appeared before the 388th District Court, Gonzalez would subject the paperwork to excessive scrutiny and dismiss cases shortly after they were placed on the docket. Moreover, she demanded payment from individuals who submitted government paperwork and supporting documentation of indigency, withholding the final decree until payment was made by the indigent parties of El Paso.

Associate Judge James Lucas repeatedly warned Gonzalez that her approach to indigency hearings was in violation of Texas Family Code 145. Gonzalez disregarded

5

these warnings, dismissing Lucas's concerns as paranoia and stupidity, and proceeded with her practice, resulting in delayed or denied access to the justice system.

**Preferential Treatment and Public Controversy**

While some attorneys received poor treatment, others received exceptional service, including special favors. One prominent incident involved attorney Luis Yanez, who employed Mayte Fitzgerald (whose precise relation to Gonzalez was unclear due to conflicting accounts). In this case, Gonzalez sealed a divorce case without proper cause for Yanez's client, a city council member. The matter attracted public attention and was reported by a local news outlet, El Paso Matters. When investigative journalists inquired about the incident, Gonzalez approached Davis at 5:00 PM, demanding his assistance. Davis, along with Judge James Lucas, spent several hours at the courthouse conducting research and drafting a response to the media inquiry.

### Demands Placed on Roy Davis by Judge Marlene Gonzalez

**Heightened Security Requirements and Personal Expense**

From the beginning of his tenure in the 388th District Court, Roy Davis faced extraordinary demands from Judge Marlene Gonzalez regarding courtroom security. Gonzalez insisted that security measures exceed county standards, prompting Davis to implement and train staff on enhanced procedures. In addition, Davis personally installed motion sensors, audible alarms, and conducted camera placement assessments, all at his own expense since the county declined to provide additional security equipment for any courts, regardless of the requests of newly elected officials.

6

Davis was pressured to use his own funds to purchase and install the necessary equipment to secure the court. He acquired all the cables required for a CCTV system and installed four personal cameras. Additionally, Davis was tasked with installing a Zoom hybrid system, which included microphones, cables, stands, Zoom cameras, an interfacing mixer, three laptops, Wi-Fi adapters, plug-in connectors, and extension cords to ensure full functionality.

Toward the end of the fiscal year in 2021, El Paso County purchased eight additional security cameras; however, installation and equipment completion were not provided by the county. This resulted in Davis purchasing more cables, connectors, Wi-Fi extenders, and HDMI transmitters to make the system operational. Gonzalez further demanded that Davis work weekends to install the new system, requiring him and Associate Judge James Lucas to spend several hours over multiple weekends completing these installations.

**Excessive Workload and Data Entry Responsibilities**

Davis was subject to daily performance demands that far exceeded the typical responsibilities of a law enforcement bailiff. On average, he managed the rescheduling of approximately 300 cases per month, prepared notices for dismissal, and completed various data entry tasks, including running daily reports on open and pending cases. These duties, generally performed by the court coordinator, were assigned to Davis. The coordinator also spent time researching addresses of pro se indigent litigants to present before indigency hearings, often making dismissive remarks about the litigants' financial status to which Gonzalez agreed.

7

Despite maintaining a full schedule of duties as outlined by El Paso County, Davis was left with little time for data input, frequently requiring him to work on weekends without compensation. These activities are verifiable through an audit of Davis's security pass card, which logs entrance and exit times at the courthouse during non-business hours.

## Denied Time Off and Unequal Treatment

Gonzalez promised Davis compensatory time off for his additional work but refused to record this time in the county's payroll system (KRONOS). In practice, Davis was never allowed to take compensatory time, and Gonzalez rarely permitted him to use accrued vacation or sick leave, restricting any time off to only one or two days at a time. Over more than three years, Davis, the only Black employee, was never permitted to take an extended vacation, unlike other staff members of non-Black races who regularly enjoyed longer periods off for travel.

## Financial Burdens and Additional Contributions

During his 41 months in the 388th District Court, Davis logged an additional 1,066 hours of work valued at $59.10 per hour, totaling approximately $63,000. He also spent over $4,000 on equipment purchases, $900 for jury duty-related equipment, $400 for fundraiser vehicle rentals, $400 for school backpacks, $300 for volunteer parking, $2,000 for campaign commercials, $700 for investigations, $400 for county record requests, $400 for a wedding arbor, $400 for a COVID shield, and $5,000 for fundraiser entertainment.

Based on the facts presented above, Gonzalez engaged in a series of actions following Davis's termination that were not only retaliatory but also damaging to his reputation.

8

Specifically, Gonzalez allegedly made false statements about Davis to third parties, constituting Defamation under Texas Penal Code Section 37.02 (Perjury) and Section 39.02 (Abuse of Official Capacity). In addition, Gonzalez's conduct is alleged to violate the following sections of the Texas Penal Code, each classified as a second-degree felony:

- Section 36.06 – Obstruction or Retaliation: Gonzalez is accused of taking adverse actions against Davis, including spreading damaging information and interfering with his professional reputation, in retaliation for his involvement in judicial complaints.

- Section 39.02 – Abuse of Official Capacity: Gonzalez allegedly used her judicial authority to direct staff and resources for personal gain, including the fabrication of official responses and the manipulation of court operations.

- Section 39.03 – Official Oppression: Gonzalez is accused of subjecting Davis to unlawful pressure and demanding actions outside his job description, such as unauthorized security work and uncompensated overtime.

- Section 37.02 – Perjury: Gonzalez allegedly provided false information in official responses to the Texas Bar and State Commission on Judicial Conduct, knowingly making untrue statements under oath.

- Section 32.51 – Fraudulent Use or Possession of Identifying Information: Gonzalez reportedly used or directed the use of untraceable cell phones registered to third parties to conceal communication and misrepresent her involvement with external parties.

9

These actions, witnessed by a decorated law enforcement official with over 40 years of experience, resulted in no legal consequences for Gonzalez. The evidence outlined above supports the assertion that Gonzalez's conduct constitutes significant violations of the Texas Penal Code and raises serious concerns regarding judicial integrity and accountability.

**Employment Background and Termination**

On May 31, 2024, I was employed as a Certified Court Bailiff for El Paso County, Texas. Under the mandates of Senate Bill 42 (attached as Exhibit A), Certified Court Bailiffs are required to be peace officers licensed by the Texas Commission on Law Enforcement (TCOLE). According to Texas Government Code Title 2, Subtitle L, Chapter 158.002(b), no individual may serve as a court security officer for any appellate, district, statutory county, county, municipal, or justice court within the state without holding a court security certification issued by a TCOLE-approved training program (see Exhibit B). Furthermore, Texas Administrative Code Title 37, Part 7, Chapter 221.41(a) specifies that applicants for the court security specialist certificate must meet all proficiency requirements, including being a licensed peace officer (see Exhibit C).

In 2021, a TCOLE police agency was established to sponsor El Paso County Bailiffs, known as the Council of Judges Agency (COJA). The term "POLICE" was added to the outerwear issued to officers. As a police agency operating in a community with a population exceeding 10,000, COJA is required to register with the appropriate local commission and function as an agency employing or sponsoring civil service protected officers, as outlined in Local Government Code 143.002 (attached as Exhibit D).

10

Despite fulfilling the mandatory responsibilities of my position as a licensed police officer in El Paso, I was wrongfully terminated. In response, I promptly filed a grievance with the Civil Service Commission. The commission dismissed my grievance on the grounds that I was an at-will employee, disregarding the evidence that El Paso County Bailiffs became part of a TCOLE-licensed police department in 2021, thereby granting civil service protection. Additionally, I filed criminal charges with the appropriate agencies against a judge who committed several felonies both in my presence and against me.

## Criminal Allegations and Legal Proceedings

The criminal allegations I brought forward were investigated by the Texas Rangers and subsequently presented to the El Paso District Attorney's Office for prosecution. Bill Hicks, who was the appointed District Attorney at the time, declined to pursue the case, characterizing the felonious incident as "no big deal."

Following the decision not to prosecute, I initiated a lawsuit against El Paso County. The case was assigned to the 384th District Court. After the presiding judge of the assigned court recused themselves, Judge Yvonne Rodriguez was appointed by Stephen Ables, the West Texas Presiding Judge—whom I had previously filed a judicial complaint against for failing to take action regarding a district judge under his jurisdiction who committed multiple violations of the Texas Penal Code in my presence. The appointment of Judge Yvonne Rodriguez (Retired) as a visiting judge, while she was an agent of and compensated by Defendant El Paso County, lacked ethical legal process and served only to advance the constructed façade of El Paso County.

I requested a reconsideration of the criminal charges against the judge from James Montoya, the newly elected District Attorney. Another comprehensive investigation was ordered and conducted by the Texas Rangers. Once the investigation was complete, the case was presented to the Montoya administration. Assistant District Attorney Amy Monsivais responded in writing, notifying me that her office had decided not to pursue the criminal case against the judge. In her correspondence, Ms. Monsivais did not specify any reason for declining the case, such as lack of evidence or prosecutorial discretion.

### Judicial Proceedings and Alleged Misconduct by Civil Case Judge

### Plea to Jurisdiction Hearing and Judicial Actions

On June 30, 2025, Judge Yvonne Rodriguez, acting as a paid agent of El Paso County, presided over a Plea to Jurisdiction filed by Defendant El Paso County. During this hearing, the Defendant introduced a newly decided case law, Brazoria County v. Read from the First Court of Appeals, which was argued without granting the plaintiff's attorney any preparation time or opportunity for research. Judge Rodriguez accepted and adopted this case law and extended her involvement beyond her official judicial capacity. She dictated which parties should be included as defendants, specifically demanding an amended defendant plea to jurisdiction referencing Brazoria County v. Read, and also required the plaintiff's petition to name the state actor accused of several felonies.

Following the hearing, both defendant and plaintiff attorneys filed amended pleas as directed by Judge Rodriguez—the defendant's on July 1 and the plaintiff's on July 8,

12

2025. Despite three formal requests to the court reporter for certified transcripts of this hearing, and confirmation of the record's existence as well as an estimated cost of $140.00, the transcript had not been provided after 110 days. It is believed that one or more actors are deliberately obstructing access to this transcript in order to conceal judicial misconduct that occurred during the hearing.

**Dismissal of Case With Prejudice**

On July 30, 2025, Judge Rodriguez granted El Paso County's plea to jurisdiction and dismissed the case "with prejudice." This dismissal was made without reference to case facts or witness testimony and was based on Judge Rodriguez's determination that the court lacked jurisdiction. However, by dismissing the case "with prejudice," the judge overstepped, as such a dismissal should be "without prejudice" if the court lacks jurisdiction, leaving open the possibility of future litigation. The dismissal in this manner effectively prevented future filings and violated constitutional rights to access the justice system. A judicial complaint has been filed against Judge Rodriguez, alleging unlawful participation during the June 30th hearing and the signing of an order that directly violated civil rights. The judge's conduct is considered highly suspect and raises concerns about intentional limitation of access to justice.

**Comparative Case: Disparate Treatment and Alleged Racial Bias**

A comparable case involved a suit filed in October 2024 against El Paso County by John Patrick Briggs, a White male and at-will employee of the district attorney's office, who had been terminated. Despite lacking a valid discrimination claim, Briggs received little resistance from the County Attorney's Office, which ultimately settled his claim for a substantial amount, even though he was re-employed and promoted shortly after his

termination. In contrast, despite a distinguished, discipline-free 40-year career in law enforcement, meritorious pay increases, and civil service protection, the plaintiff—classified as Black—was wrongfully terminated and not afforded the same rights or courtesies. Instead, the plaintiff's file was "padded" with negative information and met with obstructionist actions intended to deny rights and equal protection under the law.

## Pattern of Behavior and Alleged Collusion

Evidence points to a pattern of behavior by individuals from various offices—including the judiciary, district attorney's office, and county attorney's office—who appear to be working in concert to oppress the plaintiff, a Black employee. It was discovered that John Patrick Briggs is in a domestic relationship with Assistant District Attorney Amy Monsivais, who oversees the decision on criminal allegations against a District Judge involved in the plaintiff's case. Monsivais did not disclose this conflict of interest or recuse herself. County governments have limited resources for tort payouts; thus, Monsivais's decision to decline the criminal case against the judge supported the county's financial interests, allegedly ensuring a larger settlement for her household. The County Attorney's Office, led by Christina Sanchez, is accused of collaborating to sabotage the plaintiff's case while facilitating a favorable outcome for Briggs.

Judge Rodriguez is alleged to have engaged in ex parte communications regarding the civil case, as evidenced by her swift dismissal of the case during the initial hearing, where no evidence was presented. The judge's actions appeared predetermined, and as a visiting judge compensated by El Paso County, she may have been influenced by the prospect of future assignments and compensation. A favorable ruling for the defendant could result in future appointments and further rewards for Judge Rodriguez.

**Conspiracy and Civil Rights Violations**

There is a strong assertion that the entire government of El Paso, Texas, operates as a unified agency, with departments covering up misconduct for one another. The described actions are presented as evidence of a conspiracy to oppress a Black employee, a member of a protected class, and to violate civil service protections. The documented behavior of officials acting under color of law constitutes multiple violations under Title 42 U.S.C. § 1983, resulting in damages through deprivation and interference with constitutionally protected civil rights.

I have read the above affidavit consisting of 15 pages and attest that it is true and correct.

Roy Davis

Subscribed and sworn to by Roy Davis on the 30th day of November 2025.

Notary Public – State of Texas

Notary Seal

VICTORIA HANNA
Notary Public, State of Texas
Comm. Expires 07-01-2028
Notary ID 126513664

15