**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROY DAVIS,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **EP-25-CV-00599-DB-ATB** |
| | § | |
| **COUNTY OF EL PASO, TEXAS, *et al.*** | § | |
| | § | |
| ***Defendant.*** | § | |
| | § | |

**REPORT AND RECOMMENDATION**

Presently before the Court is Defendants El Paso County,[1] El Paso County Sheriff's Office, El Paso Sheriff's Civil Service Commission, El Paso County Civil Service Commission, Ricardo Samaniego, Jackie Butler, Iliana Holguin, David Stout, Sergio Coronado, Christina Sanchez, John Untereker, Michael Schulte, and Raymundo Hernandez's (collectively, the "County Defendants") "Motion to Dismiss under Rule 12(b)(1) and (6)" (ECF No. 7). Pursuant to 28 U.S.C. § 636, the Honorable Senior District Judge David Briones referred this case, along with this motion, to the undersigned Magistrate Judge.[2] For the reasons that follow, the motion should be **GRANTED**.

---

[1] Although Plaintiff's complaint refers to the county as "County of El Paso," the Court refers to it by its proper name, "El Paso County." Often, the Court also refers to it as "the County."

[2] Order Referring to Mag. J., ECF No. 81.

# I. BACKGROUND

## A. Factual Background

The following facts are drawn primarily from Plaintiff Roy Davis's complaint and to some extent from his other submissions,[3] and in this posture, they are accepted as true.

Davis served as a law enforcement officer at the El Paso Police Department for several decades until September 2002.[4] In November 2015, he was hired by the then-judge of the district court for the 383rd Judicial District of Texas, located in El Paso County, to work as a court bailiff in the judge's court.[5] After the conclusion of the judge's judicial service in December 2020, Marlene Gonzalez, the judge of the district court for the 388th Judicial District of Texas, also located in El Paso County, hired Davis to be her bailiff "after [she] heavily recruit[ed] him."[6] Davis started working as Judge Gonzalez's bailiff in January 2021.[7]

On or about May 22, 2024, Judge Gonzalez pushed a panic alarm button mounted to her judicial bench in her courtroom, and she did so without a bona fide emergency.[8] And that caused

[3] The Court consults other documents, including briefs, submitted by Davis for additional factual details that flesh out the "who, what, when, and where" of certain alleged events that are narrated, though somewhat incompletely, in his complaint.

[4] Compl. for Violation of Civil Rights at ¶¶ 14–15 [hereinafter Compl.], ECF No. 1.

[5] Compl. at ¶ 17; Pl.'s Resp. to [Cnty.] Def.'s Mot. to Dismiss Under R. 12(b)(1) & (6) at 5 [hereinafter Pl.'s Resp. to Cnty.'s Mot.], ECF No. 8.

[6] Compl. at ¶¶ 6, 17; Pl.'s Resp. to Cnty.'s Mot. at 5.

[7] Compl. at ¶ 19; Pl.'s Resp. to Cnty.'s Mot. at 5.

[8] Compl. at ¶¶ 6, 19; *see also* Pl.'s Resp. to Cnty.'s Mot. at 5; *id.* Ex. B at 3, 6 [hereinafter Pl.'s OCA Report] (pinpoint citations to Exhibit B are based on the page numbers assigned to the exhibit by the Court's Case Management and Electronic Case Filing system), ECF No. 8-3.

Exhibit B, entitled "Texas Court Incident Report," appears to be a report that Davis submitted to the Office of Court Administration of the Texas Judicial System regarding the false-alarm incident. *See* Pl.'s Resp. to Cnty.'s Mot. at 7 (stating "[a] true copy of the filed Texas Court Security Incident Report is incorporated as Exhibit[] B"). The report is referenced in his complaint, Compl. at ¶ 6, and so, the Court

Davis and other law enforcement officers to respond.[9] According to Davis, Judge Gonzalez stated that "she wanted to test the button to see if it works."[10] Davis believed that Judge Gonzalez committed a felony offense of initiating a false alarm in violation of Texas Penal Code § 42.06.[11] Immediately after the incident, he reported "a felony-grade criminal offense" to Michael Schulte, a deputy with the El Paso County Sheriff's Office, who also responded to the false-alarm incident.[12] According to Davis, being a certified peace officer and court security specialist, he had the responsibility of filing an incident report with the Office of Court Administration of the Texas Judicial System.[13] But Judge Gonzalez told him not to file such a report and threatened to terminate his employment if he did so.[14] Undeterred, Davis filed an incident report with that Office.[15] Upon learning that Davis filed the report, Judge Gonzalez terminated him on May 31, 2024.[16]

---

draws facts from it, *see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (In ruling on a motion to dismiss, "[a] court is permitted . . . to rely on documents incorporated into the complaint by reference." (internal quotes omitted)).

[9] Pl.'s Resp. to Cnty.'s Mot. at 5.

[10] Pl.'s OCA Report at 6.

[11] Compl. at ¶ 6; Pl.'s Resp. to Defs. James Montoya & Amy Monsivais's Mot. to Dismiss Under R. 12(b)(1) & (6) at 2 (listing multiple penal codes that Davis believes Judge Gonzalez violated) [hereinafter Pl.'s Resp. to DA's Mot.], ECF No. 15.

[12] Compl. at ¶¶ 6, 19; Pl.'s Resp. to Cnty.'s Mot. at 2.

[13] Compl. at ¶¶ 6, 24.

[14] *Id.* at ¶¶ 6, 19; Pl.'s Resp. to Cnty.'s Mot. at 9–10.

[15] Compl. at ¶¶ 6, 24–25.

[16] *Id.* at ¶¶ 6, 19, 25; Pl.'s Resp. to Cnty.'s Mot. at 13.

Later, Davis discovered that Deputy Schulte did not document Judge Gonzalez's activation of a false alarm, submit a crime report based on Davis's report to him about the same, or investigate the same.[17] Lieutenant Raymundo Hernandez, who is Schulte's supervisor, was aware of the false-alarm incident but failed to ensure that the incident was properly documented.[18] Defendant El Paso County Sheriff's Office took no action, despite that "the information of the incident went up the ranks."[19]

In October 2024, Davis sued El Paso County in the 384th Judicial District Court for violations of the Texas Whistleblower Act, Tex. Gov't Code Ann. §§ 554.001–.010.[20] In that lawsuit, El Paso County Attorney Christina Sanchez and Assistant County Attorney John Untereker represented the County—just as they are in this case.[21] After the presiding judge

[17] Compl. at ¶ 6; Pl.'s Resp. to Cnty.'s Mot. at 2, 24.

[18] Compl. at ¶ 6.

[19] *Id.*

[20] *See Davis v. Cnty. of El Paso, Texas*, No. 2024DCV4723 (384th Dist. Ct., El Paso County, Tex.), *cited in* [Cnty.] Def.'s Mot. to Dismiss Under R. 12(b)(1) & (6) at 5 [hereinafter Cnty.'s Mot.] (discussing the case), ECF No. 7, *and* Pl.'s Resp. to Cnty.'s Mot. at 8; *see also* Compl. at ¶ 11 (same).

The electronic docket of Davis's state-court lawsuit is publicly available online at an El Paso County website. *See* El Paso County Case Records Search, https://portal-txelpaso.tylertech.cloud/PublicAccess/default.aspx (click "Civil, Family & Probate Case Records" and then enter "2024DCV4723" in the "Case Number" field) (last visited Aug. 25, 2026). From the docket, the Court takes judicial notice of the dates of certain judicial proceedings and dispositions in that case. *See Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (stating that Federal Rule of Evidence 201 "authorizes the court to take judicial notice of adjudicative facts, not legal determinations" and concluding that "the district court was allowed to take judicial notice of the state court's orders, final judgment and docket as matters of public record" (internal quotes omitted)); *accord Miller v. Dunn*, 35 F.4th 1007, 1013 (5th Cir. 2022); *see also Paez v. Sec'y, Florida Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (concluding that "the dates that the district court noticed from online state court dockets constitute judicially noticeable facts under Rule 201").

[21] Compl. at ¶ 11.

recused himself/herself, Yvonne Rodriguez[22] was appointed to the case as the visiting judge.[23] At a hearing held on El Paso County's plea to jurisdiction, Davis alleges, Judge Rodriguez ordered his counsel to add Judge Gonzalez as a defendant and ordered El Paso County to submit an amended plea to jurisdiction.[24] Judge Gonzalez was added to the lawsuit, and the county attorneys submitted an amended plea to jurisdiction.[25] In July 2025, Judge Rodriguez granted the County's amended plea and dismissed Davis's claims against the County; according to Davis, the dismissal was "with prejudice."[26]

Meanwhile, Davis reported the false-alarm incident to the Texas Rangers, who conducted an investigation and referred the case to the El Paso County District Attorney's Office.[27] Bill Hicks, who was the District Attorney at the time and is not a party to this lawsuit, declined the case, "referring to [Judge] Gonzalez's felonious actions as 'no big deal.'"[28] Subsequently, when James Montoya became the District Attorney in 2025, Davis again requested prosecution of Judge Gonzalez from the District Attorney's Office.[29] Once again, the case was referred to the

---

[22] Judge Rodriguez is a former justice of the Eighth Court of Appeals of Texas. *See* Ballotpedia, https://ballotpedia.org/Yvonne_Rodriguez (last visited Aug. 25, 2026).

[23] Compl. at ¶ 11.

[24] *Id.*; Pl.'s Resp. to DA's Mot. at 3.

[25] Compl. at ¶ 11; Pl.'s Resp. to DA's Mot. at 3.

[26] Compl. at ¶ 11; *see also* El Paso County Case Records Search, https://portal-txelpaso.tylertech.cloud/PublicAccess/default.aspx (click "Civil, Family & Probate Case Records" and then enter "2024DCV4723" in the "Case Number" field) (displaying that Judge Rodriguez granted the plea on July 30, 2025) (last visited Aug. 25, 2026); *see also supra* text accompanying note 20.

[27] Compl. at ¶ 10.

[28] *Id.*

[29] *Id.* at ¶ 12; Pl.'s Resp. to DA's Mot. at 2.

Texas Rangers, who completed another investigation and submitted their findings to the District Attorney's Office.[30] In August 2025, Assistant District Attorney Amy Monsivais notified Davis over the phone that the District Attorney's Office was choosing not to pursue criminal charges against Judge Gonzalez; she gave no explanation.[31] Davis received a follow-up letter penned by Monsivais stating the same decision without any explanation.[32]

**B. Procedural Background**

On December 1, 2025, Davis, proceeding *pro se*, brought this lawsuit against the County Defendants.[33] Davis also named as defendants the El Paso County Council of Judges, Judge Gonzalez, Judge Rodriguez, District Attorney Montoya, Assistant District Attorney Monsivais, and Alexander Mietlinski;[34] these other named defendants are not parties to the present motion filed by the County Defendants. Davis asserts various claims under 42 U.S.C. § 1983.[35] He seeks declaratory judgment and monetary damages, including punitive damages.[36]

On January 1, 2026, the County Defendants filed the instant motion. On January 22, 2026, Davis filed his response to the motion, and on January 30, 2026, the County Defendants filed their reply. And on July 15, 2026, Judge Briones referred this motion to the undersigned Magistrate Judge.

---

[30] Compl. at ¶ 12; Pl.'s Resp. to DA's Mot. at 2.

[31] Compl. at ¶ 12; Pl.'s Resp. to DA's Mot. at 8.

[32] Pl.'s Resp. to DA's Mot. at 8.

[33] Compl. at ¶ 3.

[34] *Id.*

[35] *Id.* at 9 (page citation).

[36] *Id*. at 10–11 (page citation).

## II. STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to challenge the subject matter jurisdiction of the district court to hear a case, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or to adjudicate a given claim, *Matter of Benjamin*, 932 F.3d 293, 295 (5th Cir. 2019); *see also Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) ("Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." (internal quotes omitted)).

In ruling on a Rule 12(b)(1) motion, the court "accept[s] as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to a plaintiff." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025). The party asserting subject matter jurisdiction—here, Davis—"bear[s] the burden of establishing subject-matter jurisdiction." *Inclusive Louisiana v. St. James Par.*, 134 F.4th 297, 305 (5th Cir. 2025). "At the pleading stage, the burden is to allege a plausible set of facts establishing jurisdiction." *Burnett Specialists*, 140 F.4th at 693 (internal quotes omitted).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must "plead 'enough facts to state a claim to relief that is plausible on its face' and to 'raise a right to relief above the speculative level.'" *Cambric v. City of Corpus Christi*, 170 F.4th 321, 324 (5th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Such factual allegations need not be detailed, but must be 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Singh v. RadioShack Corp*., 882 F.3d 137, 144 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555). "'Labels and conclusions, and a formulaic recitation of the elements of a cause of action' are not enough, nor are facts that are 'merely consistent with a defendant's liability.'" *Id.* (brackets omitted) (first quoting *Twombly*, 550 U.S. at 555, then quoting *Iqbal*, 556 U.S. at 678).

The court's task on a Rule 12(b)(6) motion is "to determine whether the plaintiff has stated a *legally cognizable claim* that is *plausible*, not to evaluate the plaintiff's likelihood of success." *Doe* ex rel. *Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (emphasis added); *see also Frith v. Guardian Life Ins. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998) ("Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

The court's determination is guided by two guideposts. First, the court must "accept[] all well-pleaded facts as true and must consider those facts in the light most favorable to the plaintiff," *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018), but it "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions," *Heinze v. Tesco Corp*., 971 F.3d 475, 479 (5th Cir. 2020) (internal quotes omitted). Second, generally, the factual information that the court considers is limited to the facts set out in the complaint, documents attached to the complaint, and documents incorporated into the complaint by reference as well as matters of which the court may take judicial notice. *Inclusive Comtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Innova Hosp. San Antonio,*

*Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (internal quotes omitted).

### C. *Pro Se* Documents

Davis is proceeding *pro se* in this case. Courts must liberally construe complaints and briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020); *Melot v. Bergami*, 970 F.3d 596, 599 n.12 (5th Cir. 2020). However, "[e]ven a liberally construed *pro se* civil rights complaint . . . must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). And a *pro se* litigant must brief the issues and arguments. *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019); *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 n.10 (5th Cir. 2017). "[C]onclusory statements are insufficient, even for a *pro se* litigant." *Abram v. McConnell*, 3 F.4th 783, 787 (5th Cir. 2021) (internal quotes and ellipses omitted).

## III. DISCUSSION

Against the County Defendants (in fact, all defendants), Davis asserts claims under 42 U.S.C. § 1983 for deprivation of his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.[37] The County Defendants first argue that El Paso County is the only proper party to Davis's claims against them and therefore, that his claims against the remaining County Defendants should be dismissed.[38] They, then, argue that all of Davis's claims against El Paso

[37] *Id.* at 9 (page citation).

[38] Cnty.'s Mot. at 7–9.

County should be dismissed on various grounds.[39] They request that Davis's claims against them be dismissed with prejudice and without leave to amend.[40]

Before reaching the merits of the County Defendants' arguments, the Court addresses two preliminary matters: one about the County Defendants' argument that the Court lacks subject matter jurisdiction and the other about the parties' dispute over whether Davis was an employee of El Paso County.

## A. Preliminary Matters

### *1. Subject Matter Jurisdiction*

The County Defendants argue that the Court lacks subject matter jurisdiction over Davis's claims.[41] For that reason, they ask the court to dismiss Davis's claims pursuant to Rule 12(b)(1).[42] Then, they say, "[a]lternatively," assuming *arguendo* the Court finds it has subject matter jurisdiction over any claims against any of the County Defendants, Davis's claims should be dismissed pursuant to Rule 12(b)(6) because he failed to plead the required elements to establish *Monell* liability against any of the County Defendants.[43]

"Jurisdiction" is "a word of many, too many, meanings," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998), and the Supreme Court has cautioned against "profligate" use of the word, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006). The absence of a "valid" cause of action does not implicate subject-matter jurisdiction, i.e., the district courts' "statutory or

[39] *Id.* at 20.

[40] *Id.*

[41] Cnty.'s Mot. at 9–12.

[42] *Id*. at 3.

[43] *Id.*

constitutional *power* to adjudicate the case." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 643 (2002). The claim "need only be 'colorable' to invoke federal question jurisdiction." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 352 (5th Cir. 2021) (quoting *Arbaugh*, 546 U.S. at 513). "A district court lacks jurisdiction over a federal claim only if that claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 621 (5th Cir. 2017) (quoting *Steel*, 523 U.S. at 89). And "[d]etermining whether a claim is wholly insubstantial and frivolous necessarily entails consideration of the merits." *Id.* at 622.

The Court finds that Davis's complaint asserts colorable claims. So, the Court addresses the merits of his claims: in this posture, that means addressing whether the complaint states plausible claims. *See Magee*, *supra*, 675 F.3d at 854.

### *2. Whether Plaintiff Was an Employee of the County*

The County Defendants devote much of their briefs to argue that El Paso County was not Davis's employer (or Davis was not the County's employee).[44] In his complaint, Davis does not state who his employer was, but repeatedly asserts that Judge Gonzalez wrongfully terminated him;[45] he also alleges that the El Paso County Human Resources permitted his termination.[46] In

[44] *E.g., id.* at v, 2, 9, 12, 14; Cnty.'s Reply at 3–5.

[45] *E.g.*, Compl. at ¶¶ 6, 25.

[46] *Id.* at ¶ 7.

his response to the motion, Davis disputes, with evidence, that the County was not his employer.[47]

For at least two reasons, the Court does not address, much less decide, the question of whether El Paso County was Davis's employer. First, the inquiry is fact intensive as suggested by the County Defendants' reference to "all these factors,"[48] and a fact-intensive inquiry is not proper on a Rule 12(b)(6) motion to dismiss. *See Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 221 n.6 (5th Cir. 2018) ("In contrast to a motion for summary judgment, . . . a Rule 12(b)(6) motion to dismiss is not well suited to . . . [an] evidence-intensive inquiry."). Indeed, the only federal court decision that the County Defendants cite in support of their position involved a district court's resolution of a similar question on summary judgment.[49] Second, it does not appear that any employer-employee relationship between the County and Davis is directly relevant to Davis's § 1983 claims.

**B. Claims Against Non-Jural Entities**

The County Defendants argue that the El Paso County Sheriff's Office, El Paso County Sheriff's Civil Service Commission, and El Paso County Civil Service Commission are non-jural entities in that they lack capacity to be sued, and therefore, Davis's claims against them should be dismissed.[50]

---

[47] Pl.'s Resp. to Cnty.'s Mot. at 15–17 (citing exhibits); Pl.'s Resp. to [Cnty.] Defs.' Reply to Pl.'s Resp. to [Cnty.] Def.'s Mot. to Dismiss Under R. 12(b)(1) & (6) at 5 [hereinafter Pl.'s Sur-Reply to Cnty.'s Mot.], ECF No. 11.

[48] Cnty.'s Reply at 4 (citing cases from a wide variety of areas of law).

[49] *Id.* at 5 (citing *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997) (addressing multiple factors and holding that the lower court did not err by granting summary judgment on the basis that a county was not the employer of plaintiff, a court reporter, for purposes of Title I of the Americans with Disabilities Act)).

[50] Cnty.'s Mot. at 8–9; *see also Doe v. Mckesson*, 945 F.3d 818, 824 n.2 (5th Cir. 2019) ("Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity. Nonetheless, we

"Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." *Coates v. Brazoria Cnty. Texas*, 894 F. Supp. 2d 966, 968 (S.D. Tex. 2012). "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991).

"[N]umerous . . . federal courts in Texas have repeatedly and consistently held that a county's Sheriff's Office is a non[-]jural entity that is not amenable to suit." *Marshall v. Abbott*, No. 4:21-CV-384-SDJ-CAN, 2022 WL 671009, at *3 (E.D. Tex. Feb. 4, 2022) (collecting cases), *R & R adopted*, 2022 WL 659159 (E.D. Tex. Mar. 4, 2022). The County Defendants cite no case, and the Court finds none, that addresses whether the other two entities are likewise non-jural entities. In response to the County Defendants' motion, Davis, who has the burden on this question,[51] does not contest the County Defendants' argument, but says merely that he named these entities "for the purpose of *identifying* the responsibility/role/conduct of named entities."[52]

The Court finds that Davis's claims against the El Paso County Sheriff's Office, El Paso County Sheriff's Civil Service Commission, and El Paso County Civil Service Commission should be dismissed.

---

have permitted Rule 12(b) motions arguing lack of capacity. Where the issue appears on the face of the complaint, other courts have done the same and treated it as a Rule 12(b)(6) motion." (internal citation omitted) (collecting cases)), *cert. granted, judgment vacated on other grounds*, 592 U.S. 1 (2020).

[51] *See Pueblo v. City of El Paso*, No. EP-17-CV-00162-DCG, 2018 WL 7133707, at *2 (W.D. Tex. Mar. 22, 2018) ("The plaintiff has the burden of showing that the city department has the capacity to be sued." (citing *Darby*, 939 F.2d at 314)).

[52] Pl.'s Resp. to Cnty.'s Mot. at 14 (emphasis in original).

**C. Section 1983 Claims**

Section 1983 "provides a remedy for the violation, by a person acting under color of state law, *of rights* secured under the Constitution and laws of the United States." *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (brackets omitted) (emphasis in original).[53] "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Fennell v. Marion Indep. Sch. Dist*., 804 F.3d 398, 412 (5th Cir. 2015). It "is a tort statute," and "a tort to be actionable requires injury," which, in this context, "is the deprivation of a constitutional right." *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) (brackets omitted). Therefore, a § 1983 plaintiff must first "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A plaintiff may bring a § 1983 claim against a government official for actions he takes under color of state law in a personal (or individual)[54] capacity: to establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a constitutional right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff may bring a so-called *Monell* claim against a municipality, *i.e.*, a local government entity such as a county, that has violated his constitutional rights under color of state law. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). But "a municipality cannot be liable for the actions of its employees under

---

[53] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

[54] The Court uses the two words interchangeably. *Gibson v. Kilpatrick*, 838 F.3d 476, 486 n.14 (5th Cir. 2016).

the theory of *respondeat superior*," *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 165–66 (5th Cir. 2016) (citing *Monell*, 436 U.S. at 691); it can only be liable if "action pursuant to official municipal policy of some nature caused a constitutional tort," *Monell*, 436 U.S. at 691.

Finally, a plaintiff may also bring a claim against a government official in his official capacity, but an official-capacity claim generally represents only another way of pleading a claim against a local governmental entity of which the officer is an agent, and it "is not a [claim] against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).[55] Therefore, an official-capacity claim is, in all respects other than name, treated as a claim against the entity. *Id.* at 166. For an official-capacity claim, a plaintiff must show, just as he must for a *Monell* claim, that "the local government's policy or custom violated [his] constitutional rights." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023).

***1. Official-Capacity Claims***

The County Defendants argue that Davis asserts § 1983 claims against the individual County Defendants in their official capacity, and therefore, these claims are not proper and should be dismissed as duplicative of his claims against El Paso County.[56]

As a refresher, the individual County Defendants are as follows: Samaniego (county judge), Butler (county commissioner), Holguin (county commissioner), Stout (county commissioner), Coronado (county commissioner), Sanchez (county attorney), Untereker

---

[55] *See also Kentucky*, 473 U.S. at 166 ("[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.").

[56] Cnty.'s Mot. at 7–8.

(assistant county attorney), Schulte (sheriff's deputy), and Hernandez (sheriff's deputy).[57] Davis's complaint does not state if his claims against them are asserted in their official or individual capacity.[58] In his response to the County Defendants' motion, Davis does not address their arguments in this respect; he says merely that he independently named the defendants along with El Paso County "for the purpose of *identifying* the responsibility/role/conduct of named entities."[59]

To determine whether the plaintiff intends to sue a defendant in an official or individual capacity, courts "must evaluate the complaint in its entirety and look to the conduct alleged." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (internal quotes omitted). Davis's complaint alleges no facts connecting the county judge or any of the county commissioners personally to Davis's alleged harms. The Court therefore finds that he sued them in their official capacity, and in turn, his claims against them should be treated as claims against El Paso County.

The Court, however, construes Davis's allegations as asserting individual-capacity claims against the remaining individual County Defendants. His complaint alleges that the deputies failed to document and investigate Judge Gonazlez's false-alarm incident.[60] He also faults the county attorneys for their role in his state-court lawsuit against El Paso County.[61] The Court addresses Davis's claims against the deputies and county attorneys separately from his claims against the County.

---

[57] Compl. at ¶¶ 6, 11, 21.

[58] *Id.* at ¶ 3.

[59] Pl.'s Resp. to Cnty.'s Mot. at 14 (emphasis in original).

[60] Compl. at ¶ 6.

[61] *Id.* at ¶ 11.

In sum, Davis's claims against Samaniego, Butler, Holguin, Stout, and Coronado should be dismissed as duplicative of his claims against El Paso County.

### *2. Personal Capacity Claims*

To state a claim under Section 1983, a plaintiff must plausibly allege that the defendant (1) deprived him of his constitutional rights and (2) acted "under color of state law." *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017) (internal quotes omitted). As we will see, Davis's individual-capacity claims fail on the first element.

#### **(a) <u>Claims Against the Deputies</u>**

Davis believes that Judge Gonzalez committed a felony offense of initiating a false alarm in violation of Texas Penal Code § 42.06.[62] Immediately after the incident, Davis reported "a felony-grade criminal offense" to Schulte who also responded to the false-alarm incident.[63] Davis alleges that Schulte did not document Judge Gonzalez's activation of a false alarm, submit a crime report based on Davis's report to him about the same, or investigate the same.[64] Davis also alleges that Hernandez, who is Schulte's supervisor, was aware of the false-alarm incident but failed to ensure that the incident was properly documented.[65]

However, "'[t]here is no . . . constitutional right[] to an investigation.'" *Lefebure v. D'Aquilla*, 15 F.4th 650, 655 (5th Cir. 2021) (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th

---

[62] Compl. at ¶ 3; Pl.'s Resp. to Cnty.'s Mot. at 5, 24. Section 42.06(a)(1) of the Texas Penal Code provides that "[a] person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily[]" *inter alia*, "cause action by an official or volunteer agency organized to deal with emergencies." Tex. Penal Code § 42.06(a)(1).

[63] Compl. at ¶¶ 6, 19, 24; Pl.'s Resp. to Cnty.'s Mot. at 2.

[64] Compl. at ¶ 6; Pl.'s Resp. to Cnty.'s Mot. at 2, 24.

[65] Compl. at ¶ 6.

Cir. 2007)). Likewise, there is no constitutional injury when Schulte failed to document the report or submit a criminal report based on Davis's reporting. *See Held v. Adam*, No. 1:17-CV-52-LG-RHW, 2017 WL 6040812, at *2 (S.D. Miss. Dec. 6, 2017) (holding that the plaintiff in that case was "not entitled to relief under § 1983 for the alleged inadequate responses to his request to file *a police report* or press charges for the burglary of his home and theft of his vehicle" (emphasis added)).

Consequently, Davis fails to state a constitutional violation by Schulte and therefore fails to state a § 1983 claim against Schulte. In turn, Davis fails to state a § 1983 claim against Hernandez, Schulte's supervisor. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) (There can be no supervisory liability "if there is no underlying constitutional violation"); *accord Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2018) (holding in that case "without an underlying constitutional violation—of which we have found none—there can be no supervisory liability").

The Court concludes that Davis's complaint fails to state any § 1983 claims against Schulte and Hernandez; therefore, Davis's individual-capacity claims against them should be dismissed.

**(b) <u>Claims Against the County Attorneys</u>**

Davis's complaint alleges that County Attorney Sanchez and Assistant County Attorney Untereker represented the County against him in his lawsuit (the Whistleblower case) before Judge Rodriguez.[66] It further alleges that the county attorneys filed a plea to jurisdiction and then, in response to Judge Rodriguez's order, filed an amended plea to jurisdiction, which the judge granted, and his claims against the County were dismissed.[67]

---

[66] Compl. at ¶ 11.

[67] *Id.*; *see also* Pl.'s Resp. to DA's Mot. at 3.

Under Texas law, the county attorneys had a duty to represent El Paso County against Davis in his state-court lawsuit.[68] As lawyers, they had a duty "to vigorously and zealously represent" El Paso County. *Carroll v. TMX Fin. of Texas*, No. 3:19-CV-1804-L, 2025 WL 3771897, at *6 (N.D. Tex. Dec. 31, 2025). Based on the facts alleged, the county attorneys did not violate Davis's constitutional rights. *See Robert v. Abbett*, No. 3:08-CV-329WKWWO, 2009 WL 902488, at *20 (M.D. Ala. Mar. 31, 2009) (holding that by representing a county in a civil lawsuit and filing a motion to dismiss, the county's attorney did not violate the plaintiff's constitutional rights); *cf. also Pacelli v. deVito*, 972 F.2d 871, 876 (7th Cir. 1992) ("She was the state's lawyer . . . . Lawyers owe duties to their clients first and foremost. It does not violate the Constitution for a state to instruct its lawyers to look out after the state's interests—to be advocates rather than ombudsmen. Ours is an adversarial system.").

The Court concludes that Davis's complaint fails to state any § 1983 claims against Sanchez and Untereker; therefore, Davis's individual-capacity claims against them should be dismissed.

* * *

In sum, Davis's claims against Schulte, Hernandez, Sanchez, and Untereker in their individual capacity should be dismissed.

### *3. Monell Claims Against El Paso County*

To state a *Monell* liability claim under § 1983 against El Paso County, Davis's complaint must plausibly allege three elements: "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Arnone v.*

[68] *See* Tex. Gov't Code Ann. § 45.171(a) ("It is the primary duty of the county attorney in El Paso County or his assistants to represent . . . El Paso County[] and the officials of El Paso County in all civil matters pending before the courts of El Paso County and any other courts in which . . . the county, or the officials of the county have matters pending.").

*Cnty. of Dallas Cnty.*, 29 F.4th 262, 265–66 (5th Cir. 2022). The third element requires Davis to plausibly allege "a violation of a constitutional right": "As is well established, every *Monell* claim requires an underlying constitutional violation," *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (internal quotes omitted), and where a plaintiff fails to allege an underlying constitutional violation, there can be no *Monell* liability, *Magee*, 675 F.3d at 869.

As an initial matter, as discussed above, Davis's complaint fails to allege a constitutional violation by Schulte, Hernandez, Sanchez, or Untereker, and therefore, their alleged misconduct cannot provide a basis for *Monell* liability against El Paso County.

Liberally construing Davis's complaint, the Court understands Davis to assert the following claims: (a) racketeering or conspiracy; (b) race discrimination; (c) procedural due process violations; (d) "retaliation"; and (e) "wrongful termination." The County Defendants identify the same claims.[69] Below, the Court addresses whether Davis's allegations in his complaint, considered alongside his arguments in his briefs, plausibly state each claim. *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) ("[W]e look to see whether [the plaintiff's] pleadings, including [his] legal arguments, plausibly state a claim.").

**(a) <u>Racketeering or Conspiracy</u>**

In response to the County Defendants motion, Davis says that he is asserting "racketeering or conspiracy claims" against the County.[70]

"Racketeering claims are brought under the civil section of the Racketeer Influenced and Corrupt Organizations Act (RICO)," 18 U.S.C. § 1961 *et seq*. *Bocchicctio v. United States*, No. 2:15-CV-00528-JCM, 2015 WL 3467248, at *3 (D. Nev. June 1, 2015). RICO prohibits

[69] Cnty.'s Mot. at 9, 14–15, 17.

[70] Pl.'s Resp. to Cnty.'s Mot. at 18; *see also* Compl. at ¶¶ 11, 21.

specified conduct arising from and related to "racketeering activity," and it defines "racketeering activity" by enumerating an exhaustive list of predicate acts. 18 U.S.C. § 1961(1). In this lawsuit, Davis brings claims only under 42 U.S.C. § 1983.[71] He cites no authority (such as any Fifth Circuit opinions) for the proposition that a claim may be brought under § 1983 for RICO violations. Moreover, the County Defendants correctly point out that under the Fifth Circuit law, governmental entities, such as counties, cannot be proper RICO defendants. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 & n.12 (5th Cir. 2015). Davis's racketeering claims against El Paso County must be dismissed.

Turning to Davis's conspiracy claim, the County Defendants argue that his complaint fails to state a claim for conspiracy because it alleges no underlying violation.[72] "To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Bevill v. Fletcher*, 26 F.4th 270, 274–75 (5th Cir. 2022). In his response to the County Defendants' motion, Davis advances two sets of allegations for this claim,[73] but both fail to plausibly allege, at a minimum, the second element.

The first set of allegations turns on County Attorney Sanchez and Assistant County Attorney Untereker's role in their representation of El Paso County in his lawsuit (the Whistleblower case) before Judge Rodriguez.[74] He argues that the county attorneys submitted an

[71] Compl. at 9 (page citation); Pl.'s Civ. Cover Sheet ("Violation of Civil Rights of Due Process, Equal Protection, Retaliation"), ECF No. 1–1.

[72] Cnty.'s Mot. at 12 (arguing "the Fifth Circuit has consistently held that a conspiracy claim cannot bestow liability if there is no underlying violation of section 1983").

[73] Pl.'s Resp. to Cnty.'s Mot. at 18–19.

[74] Compl. at ¶ 11; Pl.'s Resp. to Cnty.'s Mot. at 18.

amended plea to jurisdiction so that Judge Rodriguez could dismiss his case against the County.[75] As we have discussed above, *see* Part (III)(C)(2)(b), *supra*, there was no violation of Davis's constitutional rights in this regard. So, Davis's complaint fails to state a § 1983 claim for conspiracy based on the county attorney's conduct. *See Castille v. Port Arthur ISD*, 168 F.4th 240, 255 (5th Cir. 2026) (affirming district court dismissal of a § 1983 plaintiff's conspiracy claim because the plaintiff did not sufficiently plead a deprivation of his constitutional rights).

The second set of allegations turns on Assistant District Attorney Monsivais's alleged conduct. Davis's complaint alleges that he requested prosecution of Judge Gonzalez from the District Attorney's Office, but Monsivais notified Davis that the Office was choosing not to pursue criminal charges against the judge and she gave no explanation.[76] In his briefs, Davis avers that Monsivais did not want to pursue criminal charges against a local district judge, that she sought to curry favor with County Attorney Christina Sanchez, who once was Monsivais's colleague, and that Monsivais's decision not to prosecute proved to be financially beneficial to her because the county funds preserved by weakening his state-court lawsuit (because Monsivais did not prosecute Judge Gonzalez) were later used to pay for settlement in a lawsuit brought by Monsivais's domestic partner.[77]

Monsivais is not a party to the County Defendants' motion, and in a separate report and recommendation, the Court has addressed these allegations in ruling on the district attorneys'

[75] Pl.'s Resp. to Cnty.'s Mot. at 18.

[76] Compl. at ¶ 12.

[77] *Id.* at 9; Pl.'s Resp. to Cnty.'s Mot. at 18–19.

motion.[78] In that report, the Court has held that Monsivais cannot be liable for conspiracy because a prosecutor's "decision to file or not file criminal charges is protected by prosecutorial immunity," *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009), and in turn, Monsivais "is absolutely immune from a civil conspiracy charge when [her] alleged participation in the conspiracy consists of otherwise immune acts," *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006).[79]

Still, "[a] conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on," Sanchez or another County Defendant, "without regard to who committed the particular act," but "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). However, there is no "constitutional right to have someone criminally prosecuted." *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Consequently, Davis's complaint fails to plausibly show that an actual constitutional deprivation occurred from the alleged conspiracy and in turn therefore fails to state a conspiracy claim against any County Defendant. *See Smith v. Hebert*, 533 F. App'x 479, 484 (5th Cir. 2013) (concluding that "[a]s no § 1983 violation was established, [the plaintiff's] claim of civil conspiracy was properly dismissed" where the plaintiff claimed that "all of the defendants had conspired to retaliate against him"); *Riddle v. Riepe*, 866 F.3d 943, 949 (8th Cir. 2017) ("Absent a constitutional violation, there is no actionable conspiracy claim." (internal quotes omitted)).

---

[78] R & R at 10–12, ECF No. 91.

[79] *See also id.*

**(b) <u>Race Discrimination</u>**

To adequately plead a discrimination claim under the Equal Protection Clause and § 1983, a plaintiff must allege that (1) he was treated differently from a similarly situated individual of a different race and (2) the differential treatment was motivated by discriminatory intent. *Quiroz v. Hernandez*, 167 F.4th 254, 261 (5th Cir. 2025); *Fennell*, 804 F.3d at 412.

Davis's race is mentioned in a single paragraph in his complaint. It states:

> *Davis's race is Black*, classifying him as belonging to a protected class of the population. Davis, pursuant to his employment position, should have also fallen under the protection of civil service. All of Davis's guaranteed rights were violated. Davis alleges those violations to have occurred because of *his race* as due process is typically exercised in similar situations involving his *Caucasian counterparts*. Davis's maltreatment based on his race is the only conclusion that can be reasonably reached.[80]

The County Defendants argue that Davis's complaint makes conclusory allegations that he was discriminated against because of his race and that it provides no other details as to who his Caucasian counterparts were, what positions they held, what employment actions were taken against them by the County, or when these acts allegedly occurred.[81] Therefore, they argue, Davis fails to state a claim for race discrimination.[82]

In his response to the County Defendants' motion, Davis attempts to show that El Paso County treated him differently than a white/Caucasian assistant district attorney; that's allegedly Assistant District Attorney Monsivais's domestic partner. *See* Part III(C)(3)(a), *supra*. He contends that the district attorney was an at-will employee; he brought a lawsuit against the county after he was terminated; the county settled that case, with no or minimal opposition; and

[80] Compl. at ¶ 21 (emphasis added).

[81] Cnty.'s Mot. at 15–16.

[82] *Id.* at 17.

he was reemployed.[83] Davis claims that the facts and events of the district attorney's termination and his are identical, but the County has not reemployed or reinstated Davis.[84]

Davis's allegations do not permit the Court to infer that the County took, or failed to take, the alleged actions *because* of his race. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotes and brackets omitted)); *see also Inclusive Comtys. Project*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (*quoting Iqbal*, 556 U.S. at 678)). Davis thus fails to plausibly allege, at a minimum, any race-based discriminatory intent on behalf of any of the County Defendants involved. His complaint therefore fails to state a discrimination claim under § 1983, and this claim should be dismissed.

**(c) <u>Procedural Due Process</u>**

Davis alleges that the El Paso Council of Judges[85] maintains or manages a "paid" "law enforcement agency" (sometimes, Davis refers to it as "police agency" or "police department") that includes 48 "peace officers," including 30 bailiffs for district and county courts in El Paso County, and the agency is licensed by, or registered with, the Texas Commission on Law

---

[83] Pl.'s Resp. to Cnty.'s Mot. at 21.

[84] *Id.*

[85] *See* Tex. Gov't Code Ann. § 75.014(a) ("The El Paso Council of Judges is composed of the judges of the district courts of El Paso County, the judges of the county courts at law of El Paso County, and the judge of the probate court of El Paso County."); *Luttrell v. El Paso Cnty*., 555 S.W.3d 812, 821 n.1 (Tex. App.—El Paso 2018, no pet.) ("The Council of Judges of El Paso is a group consisting of all the district court and county court judges in El Paso County, with the authority to make decisions on administrative issues within the county's court system.").

Enforcement (TCOLE).[86] He alleges that he was a certified court security specialist (or "certified court bailiff"); and as such, he was a "peace officer" licensed by the TCOLE.[87] He adds that he was a "commissioned peace officer" sponsored by the El Paso Council of Judges' law enforcement agency.[88]

He alleges that as a certified peace officer, he was not an at-will employee but was an employee with "civil service protection" pursuant to Section 143.002 of the Texas Local Government Code. He alleges that Judge Gonzalez terminated him without the benefit of due process that should have been afforded to him as a civil service employee,[89] and El Paso County deprived him of due process when it terminated him because it did not inquire into or investigate his statements about his termination by Judge Gonzalez.[90] He also alleges that he filed a grievance with the El Paso County Civil Service Commission, but the Commission disregarded his civil service protection under Section 143.002 of the Texas Local Government Code and dismissed his grievance on the grounds that he was an at-will employee.[91]

The Court first sets out the relevant legal framework for analyzing a procedural due process claim as it relates to civil service protection. The Due Process Clause of the Fourteenth

[86] Compl. at ¶ 9; Pl.'s Resp. to Cnty.'s Mot. at 3, 8, 17, 20. The TCOLE is "a state agency," "which, among other things, establishes minimum standards applicable to peace-officer licensing." *Jefferson Cnty. v. Jefferson Cnty. Constables Ass'n*, 546 S.W.3d 661, 669 (Tex. 2018) (citing Tex. Occ. Code §§ 1701.051(a), .151(2)).

[87] Compl. at ¶¶ 6, 17, 19; Davis Aff. at 10, ECF No. 1. Davis's affidavit is attached to his complaint; so, the Court may consider it.

[88] Compl. at ¶ 23; *see also* Pl.'s Resp. to Cnty.'s Mot. at 8 (arguing that El Paso County "duly appointed him as a peace officer" via the El Paso Council of Judges' "'paid' police department").

[89] Compl. at ¶ 25.

[90] Pl.'s Resp. to Cnty.'s Mot. at 20, 25.

[91] Davis Aff. at 10–11.

Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[P]rocedural due process (often summarized as 'notice and an opportunity to be heard'), is a right to a fair procedure or set of procedures before one can be deprived of property by the state." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). Thus, to state a procedural due process claim under § 1983, a plaintiff must plausibly allege that he was "deprived of a protected property interest." *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir. 1984). "Property interests are created and defined by existing rules or understandings that stem from an independent source such as state law." *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020) (internal quotes omitted).

In Texas, the general rule is that "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).[92] But at-will employment may be modified to provide public employees with a property interest. *Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 348 (Tex. 2007); *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). This modification "may be done by agreement with the employer, as in a personnel manual, and through civil service systems." *Wiland*, 216 S.W.3d at 348 (footnotes omitted). Where a public employer's civil service system provides that its covered employees cannot be discharged without just cause, the covered employees have a property interest in their continued employment. *Id.* at 347, 349, 354.

In *Wiland*, three deputy constables sued Dallas County for denying them procedural due process. The county had a civil service system, which was created under Chapter 158 of the

[92] *See also Tollett v. City of Toyah*, No. PE:07-CV-00030-RAJ, 2007 WL 9710566, at *2 (W.D. Tex. Oct. 18, 2007) ("At-will employment is not sufficient to support a due process claim and is not a constitutionally-protected property interest for purposes of claims under Section 1983." (citing *Bishop v. Wood*, 426 U.S. 341, 345–47 (1976)).

Texas Local Government Code. *Wiland*, 216 S.W.3d at 348 n.11. The county's civil service manual included constables in its definition of "employee," and provided that an employee may be dismissed "without prior notice for just cause." *Id.* at 349. The Texas supreme court held that "the system's covered employees cannot be discharged without just cause, and thus they have a property interest in continued employment." *Id.* at 347; *see also id.* at 354. Observing that the county's civil service system "provide[d] covered employees important procedures for hearing and deciding grievances," the court concluded that the deputies were entitled to have a hearing on their grievances, and since they were denied such a hearing, they were denied procedural due process. *Id.* at 353–54.

With this legal framework set, the Court turns to the parties' arguments. Recall, Davis claims that he is entitled to civil service protection pursuant to Section 143.002 of the Texas Local Government Code.[93] In their motion, the County Defendants argue that El Paso County cannot be liable because Chapter 143 of the Texas Local Government Code does not apply to a county.[94] They correctly point out that Chapter 143 applies to a "municipality," Tex. Loc. Gov't Code Ann. § 143.002(a), and the County is not a "municipality" as defined by the Texas Local Government Code, Tex. Loc. Gov't Code § 1.005(3) ("'Municipality' means a general-law municipality, home-rule municipality, or special-law municipality."); *cf. also JNC Land Co. v.*

---

[93] Compl. at ¶¶ 8–9, 25; *id.*, Ex. D, ECF No. 1.

[94] Cnty.'s Mot. at 15. Chapter 143 of the Texas Local Government Code, referred to as the Fire Fighter and Police Civil Service Act, "applies only to a *municipality* that meets specified statutory requirements," *Mahmoud v. Tarrant Cnty. Coll. Dist.*, No. 05-23-01129-CV, 2025 WL 3055625, at *13 n.25 (Tex. App.—Dallas Oct. 31, 2025, pet. denied) (emphasis in original), and it "provides for a civil service commission to oversee the relationship between municipalities and their police officers and fire fighters when the municipality adopts the chapter," *Kuykendall v. City of Grand Prairie*, 257 S.W.3d 515, 517 (Tex. App.—Dallas 2008, no pet.); *see also City of Lubbock v. Elkins*, 896 S.W.2d 346, 350 (Tex. App.—Amarillo 1995, no writ) ("Chapter 143 of the Texas Local Government Code regulates the employment, suspension and termination of police officers in the various municipalities of the state.").

*City of El Paso*, 479 S.W.3d 903, 908 n.2 (Tex. App.—El Paso 2015, pet. denied) ("The City of El Paso is an incorporated home-rule city. A home-rule city is a type of municipality." (internal citations omitted)); Tex. Loc. Gov't Code § 271.151 ("'Local governmental entity' means a political subdivision of this state, *other than a county* . . . , including a[] . . . municipality . . . ." (emphasis added)). Consequently, Davis has no claim against El Paso County based on Section 143.002 of the Texas Local Government Code.

Moreover, to the extent that Davis alleges that the El Paso Council of Judges failed to comply with Chapter 143 of the Texas Local Government Code,[95] his allegation sounds in a violation of Texas law, which is not actionable under § 1983. *See Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902 (5th Cir. 2007) ("It is well established that violations of state law are not actionable under § 1983." (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 (5th Cir. 1991))).

Finally, although Davis alleges that he was an employee of El Paso County and, in his complaint, references the El Paso County Civil Service Commission, he has not alleged that he was covered by that civil service system. Indeed, according to the Commission's policies, bailiffs are excluded from coverage. *See* El Paso Cnty. Dep't of Hum. Res., *Civil Service Coverage & Exclusions* § II(A)(7) (adopted on Dec. 15, 2014, and revised on July 27, 2020).[96]

In sum, Davis fails to allege that he was *covered* by a relevant civil service system that provided a property interest in his continued employment, and therefore, he fails to state a § 1983

---

[95] *See* Compl. at ¶ 9; Pl.'s Resp. to Cnty.'s Mot. at 4.

[96] *See* El Paso County, https://www.epcounty.com/ (click "Department Directory," then click "Human Resources," then click "Policies" on the menu on the left side of the screen, then click "Civil Service Policies," and then, on the drop-down menu, click the link entitled, "Civil Service Coverage and Exclusions (PDF)") (last visited Aug. 25, 2026). The Commission's policies are available online, and the Court takes judicial notice of the same.

procedural due process claim.

**(d) <u>"Retaliation" Claim</u>**

Davis's complaint alleges the following. He believed that Judge Gonzalez violated one or more penal codes when she pushed the panic alarm button in her courtroom without a bona fide emergency.[97] Judge Gonzalez told him not to file any report with the Office of Court Administration of the Texas Judicial System and threatened to terminate his employment if he did so.[98] He filed a report with that Office, and within days after he did so, Judge Gonzalez terminated him.[99]

Davis claims that his termination was "retaliatory."[100] He does not identify what *specific* constitutional rights were violated by the retaliation. But his allegations, liberally construed, sound in a First Amendment retaliation claim: that is, Judge Gonzalez terminated him in retaliation for exercising his First Amendment rights.[101] *See Anderson v. Valdez*, 845 F.3d 580,

---

[97] Compl. at ¶¶ 6, 19; Pl.'s Resp. to Cnty.'s Mot. at 7.

[98] Compl. at ¶¶ 6, 19; Pl.'s Resp. to Cnty.'s Mot. at 9–10.

[99] Compl. at ¶¶ 6, 19, 24–25.

[100] *Id*. at ¶ 26.

[101] Davis brings this § 1983 action for "the deprivation of rights afforded under the 5th and *14th Amendments*," Compl. at 9 (page citation), and under the prayer section of his complaint, Davis seeks a declaration that his "termination was wrongful, *retaliatory*, and in violation of his 5th and *14th Amendment Rights*." Compl. at 11 (same) (emphasis added). "The First Amendment, of course, is applicable to the States through the Fourteenth Amendment." *Bigelow v. Virginia*, 421 U.S. 809, 811 (1975).

To be sure, Davis's allegations may also sound in a claim for violations of the Texas Whistleblower Act. *See Univ. of Texas Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 682 (Tex. 2013) ("The Texas Whistleblower Act bars retaliation against a public employee who reports his employer's or co-worker's 'violation of law' to an 'appropriate law enforcement authority'—defined as someone the employee 'in good faith believes' can 'regulate under or enforce' the law allegedly violated or 'investigate or prosecute a violation of criminal law.'" (quoting Tex. Gov't Code Ann. § 554.002))). But a "claim that the defendants violated Texas' Whistleblowers Act cannot serve as a basis for [a] §

586, 586, 590, 599 (5th Cir. 2016) (addressing a First Amendment retaliation claim based on allegations that plaintiff, a briefing attorney, *viz.*, a law clerk, of the Texas Thirteenth Court of Appeals, filed a disciplinary complaint with the State Commission on Judicial Conduct describing what he believed to be malfeasance by the chief judge of that court).

So, the question is: based on the facts alleged, is El Paso County plausibly liable for Judge Gonzalez's retaliatory termination in violation of Davis's First Amendment rights? That, as we have said, is answered under the *Monell* framework.

The County points out that Judge Gonzalez is the duly elected district court judge of the district court for the 388th Judicial District of Texas.[102] It also points out[103] that the Texas Government Code provides that "[t]he judges of the district courts, including family district courts, having jurisdiction in El Paso County . . . may each appoint a person to serve the court as bailiff," Tex. Gov't Code Ann. § 53.002(c), and that "[a] bailiff . . . appointed under this subchapter holds office at the *will* of the judge of the court that the bailiff . . . serves," *id.* § 53.005 (emphasis added). The County adds that Davis's complaint alleges Judge Gonzalez hired, fired, and retaliated against him.[104]

As particularly pertinent to Davis's *Monell* claim based on Judge Gonzalez's retaliatory termination, the County argues that Judge Gonzalez, as a duly elected district judge, is a "state official" and not an employee of the County.[105] Therefore, the County continues, it cannot be

---

1983 cause of action." *Stegemiller v. Wilson*, 15 F.3d 180, 1994 WL 24904, at *2 (5th Cir. Jan. 13, 1994) (unpublished but precedential opinion pursuant to Fifth Circuit Rule 47.5.3).

[102] Cnty.'s Mot. at 9 (citing Tex. Const. Art. 5, §7); *id.* at 13 n.5.

[103] *Id.* at 10.

[104] *Id.*

[105] *Id.* at 13 & n.5.

responsible for the reported bad acts of a state official.[106] It argues that Davis fails to assert any "policy or custom" of the County for inserting itself in the employment decision of state officials—let alone any county policy or custom that led to Judge Gonzalez's retaliation against him or termination of him.[107] Moreover, the County contends, Davis fails to point to "any County official policymaker" who contributed to Judge Gonzalez's decision to retaliate against him or terminate him.[108] As such, the County concludes that Davis does not, and cannot, show any "county policy or custom" was the moving force behind any of his alleged harms.[109]

Davis concedes that as an elected judge, Judge Gonzalez is a "state official."[110] But he contends that El Paso County ultimately maintained the role and responsibility as his employer, and Judge Gonzalez played a role akin to a manager, supervisor, or department head—not as his employer.[111] He argues that El Paso County adopted the practice of (a) not intervening in employment matters between elected officials and county-provided staff members (employees)[112] and (b) delegating to the elected officials the "hire and fire" authority as well as supervision of the staff members' "day-to-day tasks."[113] He also argues that the county, with

---

[106] *Id.* at 13.

[107] *Id.* at 14–15.

[108] *Id.* at 18–19.

[109] *Id.* at 20.

[110] Pl.'s Resp. to Cnty.'s Mot. at 7, 21.

[111] *See id.* at 11; Pl.'s Sur-Reply to Cnty.'s Mot. at 5.

[112] *See* Pl.'s Resp. to Cnty.'s Mot. at 10; *see also id.* 11.

[113] Pl.'s Sur-Reply to Cnty.'s Mot. at 5; *see also* Pl.'s Resp. to Cnty.'s Mot. 10–11.

deliberate indifference, fails to provide to the elected officials supervisory or management training regarding the proper management of the staff members of the elected officials.[114]

The parties' arguments turn on the first two elements of a *Monell* claim—no doubt, due to the County's opening arguments.[115] But the third *Monell* element is pressing here. Recall, *Monell* claims require three elements: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. *See* Part III(C)(3), *supra*. The third element requires an underlying constitutional violation to begin with. Simply

---

[114] Pl.'s Resp. to Cnty.'s Mot. at 11.

[115] Because Davis is *pro se*, the Court provides a brief overview of the laws regarding the first two elements of a *Monell* claim and explains why it does not address them in this posture.

As to the first *Monell* element (policymaker), "only *county* policymakers count for liability under *Monell*." *Arnone*, 29 F.4th at 266 (emphasis in original). Although Judge Gonzalez is an elected state official, *see Daves v. Dallas Cnty.*, 22 F.4th 522, 540 (5th Cir. 2022) (en banc) ("Texas district judges are undeniably elected state officials." (internal quotes omitted)), "sometimes a policymaker wears more than one hat": "an official sometimes acts for the county, and sometimes acts for another governmental entity, like the state," *Arnone*, 29 F.4th at 266. This "dual-hat" issue often is implicated in *Monell* claims involving actions of county sheriffs, county district attorneys, county judges, and district judges. *Id.* at 268 (district attorney); *Daves*, 22 F.4th at 534–41 (county judges, district judges, and sheriff). As to the specific conduct challenged in the litigation, whether a state official was acting on behalf of the state or of the county—*i.e.*, whether she was acting as a state or county policymaker—requires an analysis of the relevant state law relating to that specific conduct. *Daves*, 22 F.4th at 533; *see also id.* at 533–41 (analyzing relevant Texas statutes and provisions of the Texas constitution); *Arnone*, 29 F.4th at 268–70 (same).

As to the second *Monell* element (official policy), ordinarily, "a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006). However, in rare circumstances, a single decision may constitute municipal policy where the decision was rendered by an individual with "final policy making authority" with respect to the subject matter in question. *Id; see also Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019); *Jones v. City of Hutto*, 154 F.4th 332, 337 (5th Cir. 2025).

The Court need not undertake the arduous task of analyzing the first two elements of Davis's *Monell* claim because, as we will see, his allegations readily falter on the third element, in particular, the requirement of an underlying constitutional violation. That is to say, even assuming that Davis's allegations in his complaint, considered alongside his arguments in his briefs, plausibly establish the first two elements of *Monell* liability, they ultimately fail to establish the third element.

put, El Paso County "cannot be liable for causing or endorsing a violation if no violation occurred." *Perdomo v. City of League City*, 163 F.4th 921, 926 (5th Cir. 2026).

The Court therefore addresses whether Davis's complaint sufficiently pleads that Judge Gonzalez violated Davis's First Amendment rights in terminating him—the underlying constitutional violation.[116] To state a First Amendment retaliatory-discharge claim in the public employment context, a plaintiff must show that "(1) he suffered an adverse employment decision, (2) *he spoke as a citizen on a matter of public concern*, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action." *Bevill*, 26 F.4th at 275–76 (emphasis added). "Evaluation of the second prong is a question of law to be resolved by the court." *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017) (citing *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015)); *see also Graziosi*, 775 F.3d at 736 ("Whether a statement is made as an employee or as a citizen is a question of law.").

To see whether Davis "spoke as a citizen on a matter of public concern," the Court "first must decide whether" in reporting the false-alarm incident to the Office of Court Administration of the Texas Judicial System, "he spoke as a citizen or an employee." *Gibson*, 838 F.3d at 481. "The 'as a citizen' requirement draws a distinction between when public employees speak in their private capacities and when they speak pursuant to their official duties." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020) (second internal quotes omitted).

[116] In its motion, the County does not raise this precise issue. "Normally, a district court can only dismiss a claim *sua sponte* after giving the adverse party notice and an opportunity to respond." *Jones v. City of Dallas*, No. 24-10803, 2025 WL 2491127, at *6 (5th Cir. Aug. 29, 2025) (citing *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021)). However, "[a] magistrate judge's report and recommendation," such as this one by the undersigned Magistrate Judge, "constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions." *Id.* (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)). So, the Court addresses whether Davis's complaint sufficiently pleads a First Amendment retaliation claim.

"When public employees speak pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and their speech is not protected." *Id.* at 307–08. That is what happened here—based on Davis's allegations.

As mentioned above, *see* Part III(C)(3)(c), *supra*, Davis alleges that he was a "certified peace officer"[117] or "peace officer"[118] by virtue of being a certified court security specialist or certified court bailiff.[119] Relying on Section 158.002 of the Texas Government Code, Davis states in his affidavit that "Certified Court Bailiffs are required to be peace officers licensed by the Texas Commission on Law Enforcement."[120] Section 158.002 provides that a person may not serve as a "court security officer" for, among other courts, a district court "in this state unless the person holds a court security certification issued by a training program approved by the Texas Commission on Law Enforcement." Tex. Gov't Code Ann. § 158.002(a). The term "court security officer" means "a constable, sheriff, sheriff's deputy, municipal peace officer, or *any other person assigned to provide security for*," among other courts, a district court in this state. *Id*. § 158.001 (emphasis added); *see also id.* § 53.0071 ("Unless the appointing judge provides otherwise in the order of appointment, a bailiff appointed under Section . . . 53.002(c) . . . is a 'peace officer' for purposes of Article 2A.001, Code of Criminal Procedure."). Based on his allegations, Davis therefore was a peace officer by virtue of being appointed as a bailiff or, as he puts it, being a certified court security specialist/officer.

---

[117] Compl. at ¶ 6.

[118] *Id.* at ¶¶ 19, 23.

[119] *Id*. at ¶¶ 6, 17, 19; Davis Aff. at 10.

[120] Davis Aff. at 10 (citing Ex. B); *see also* Compl. Ex. B (copy of Tex. Gov't Code Ann. 158.002), ECF No. 1.

Then, Davis alleges that as a peace officer or a court security specialist, he had the duty or "responsibility of filing an incident report with the Texas Office of Court Administration."[121] He anchors this duty to Texas Senate Bill 42 (2017), codified at Article 102.017(f) of the Texas Code of Criminal Procedure.[122] And in his own words, "Davis performed his duties as a peace officer by properly reporting a felonious crime . . . to [the] court administration within the prescribed 72 hours."[123]

Davis's allegations thus establish that in reporting the false-alarm incident to the Office of Court Administration of the Texas Judicial System, he spoke as an employee—not as a citizen. *See Gibson v. Kilpatrick*, 773 F.3d 661, 671–72 (5th Cir. 2014) (holding, in the context of First Amendment retaliation claim, that a police chief spoke as an employee, not as a citizen, when he reported the mayor's misconduct to the Office of State Auditor because the chief was fulfilling his duties as a law enforcement officer). That dooms his First Amendment retaliation

---

[121] Compl. at ¶ 6; *see also id.* at ¶¶ 19, 24.

[122] *Id.* at ¶ 6; *see also* Pl.'s Resp. to Cnty.'s Mot. at 7 (alleging "Plaintiff did have a duty to report the security incident" (citing Texas Senate Bill 42); Compl. Ex. A (a copy of Texas Senate Bill 42).

Article 102.017(f) of the Texas Code of Criminal Procedure provides:

> The sheriff, constable, or other law enforcement agency or entity that provides security for a court shall provide to the Office of Court Administration of the Texas Judicial System a written report regarding any *security incident* involving court security that occurs in or around a building housing a court for which the sheriff, constable, agency, or entity provides security not later than *the third business day* after the date the incident occurred. A copy of the report must be provided to the presiding judge of the court in which the incident occurred. The report is confidential and exempt from disclosure under Chapter 552, Government Code.

Tex. Code Crim. Proc. Ann. art. 102.017(f) (emphasis added).

[123] *E.g.*, Compl. at 24; *see also id.* at ¶ 19 ("Davis fulfilled his duty and was subsequently wrongfully terminated by Gonzalez.").

claim against Judge Gonzalez: that is to say, in terminating Davis, Judge Gonzalez did not violate his First Amendment rights.

In turn, therefore, his allegations fail to state a claim for *Monell*/municipal liability against El Paso County—based on Judge Gonzalez's retaliatory termination. *See Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022) ("[W]ithout a predicate constitutional violation, there can be no *Monell* liability.").

**(d) <u>"Wrongful Termination" Claim</u>**

Davis's complaint variously alleges that Judge Gonzalez "wrongfully terminated" him,[124] and he seeks a declaration that his "termination was *wrongful*, retaliatory, and in violation of his 5th and 14th Amendment Rights."[125] In his brief, he states that the "County, with deliberate indifference, played both an active and passive role in the following: wrongful termination, retaliation, discrimination."[126] Ultimately, in his sur-reply, he seems to say that he is not asserting any "wrongful termination" claim.[127]

A wrongful termination or discharge claim[128] under § 1983 must be premised on an alleged violation of a constitutional right. *See Cook* ex rel. *Estate of Tessier v. Sheriff of Monroe*

---

[124] Compl. at ¶¶ 19, 25.

[125] *Id*. at 11 (page citation) (emphasis added).

[126] Pl.'s Resp. to Cnty.'s Mot. at 20.

[127] *See* Pl.'s Sur-Reply to Cnty.'s Mot. at 2–3 ("Defendant County of El Paso fails to acknowledge that Plaintiff's suit i[s] entitled 'Complaint for Violation of Civil Rights' in all capital letters, bolded, and underlined on page one of the filed complaint. Also, a review of the civil cover sheet shows the 'civil rights' box checked. *There are no boxes checked or any indication of this being a wrongful termination suit* or associated with an employment issue." (emphasis added)); Pl.'s Civ. Cover Sheet ("Violation of Civil Rights of Due Process, Equal Protection, Retaliation.").

[128] *See* Black Law Dictionary (12th ed. 2024) (defining "wrongful-discharge action" and "wrongful-termination action" as "[a] lawsuit brought by an ex-employee against the former employer, alleging that the termination of employment violated a contract or was illegal.").

*Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("A § 1983 claim is predicated on an alleged violation of an underlying constitutional right."); *cf., e.g.*, *Caine v. Hardy*, 943 F.2d 1406, 1415 (5th Cir. 1991) (en banc) ("If a public employee's protected speech was the reason for termination, the first and fourteenth amendments afford a claim against the employer."); *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) ("Claims of retaliatory adverse employment action for the exercise of First Amendment rights are cognizable under § 1983."); *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997) (Sex discrimination in public employment violates the Equal Protection Clause of the Fourteenth Amendment and therefore is actionable under § 1983.).

To the extent Davis alleges that Judge Gonzalez or the County wrongfully terminated him in retaliation for his report to the Office of Court Administration of the Texas Judicial System, the Court has addressed his allegations above, construing them as alleging a violation of his First Amendment rights. *See* Part III(C)(3)(d), *supra*. To the extent Davis alleges that Judge Gonzalez or the County wrongfully terminated him without affording proper due process, the Court has addressed those allegations too. *See* Part III(C)(3)(c), *supra*. And to the extent Davis alleges that Judge Gonzalez or the County wrongfully terminated him because of his race in violation of the Equal Protection Clause, the Court has also addressed them. *See* Part III(C)(3)(b), *supra*.

* * *

In summary, for each of Davis's claims against El Paso County, he fails to plausibly allege an underlying constitutional violation. In turn, therefore, Davis's complaint fails to state a *Monell* claim against El Paso County. His claims against El Paso County should therefore be dismissed.

**D. Dismissal With or Without Prejudice?**

The County Defendants request that Davis's claims against them be dismissed with prejudice and without leave to amend.[129] Generally, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed with prejudice. *Pitts v. Waffle House, Inc*., No. 23-60436, 2024 WL 1904556, at *3 (5th Cir. May 1, 2024) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Granting leave to amend is not required, however, if the plaintiff has already pleaded his "best case," *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009), or if amendment would be futile, *Jackson v. United States*, 68 F.3d 471, 1995 WL 581898, at *2 (5th Cir. 1995) (unpublished but precedential opinion pursuant to Fifth Circuit Rule 47.5.3); *see also Meeks v. DeBouse*, No. 24-10431, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) ("Dismissal may be appropriate without an opportunity to amend, however, where amendment is futile because 'the facts alleged are fantastic or delusional scenarios' or the legal theory upon which a complaint relies is indisputably meritless.'" (*quoting Eason v. Thaler*, 14 F.3d 8, 9 n.5 (5th Cir. 1994)), *cert. denied*, 145 S. Ct. 2799 (2025).

In this Report and Recommendation, the Court has identified the deficiencies in Davis's complaint as to each of his claims asserted against the County Defendants. *See Reyna v. Spotify Tech*., S.A., No. 25-50919, 2026 WL 1910246, at *1 (5th Cir. July 2, 2026) (stating that "the magistrate judge's report provided notice of the defects in the complaint"). The Federal Rules of Civil Procedure allow Davis to file written objections to this Report and Recommendation "[w]ithin 14 days after being served with a copy of" the same. Fed. R. Civ. P. 72(b)(2). Thus, Davis has an opportunity to respond to the deficiencies that the Court has identified.

---

[129] Cnty.'s Mot. at 20.

Moreover, as thoroughly discussed above, with one exception, for all of his claims against the County Defendants, Davis plainly fails to state a cognizable constitutional violation; it therefore appears that no amount of further factual allegations would save these claims from dismissal. As for his Equal Protection claim, the one exception, the Court has concluded that Davis fails to allege sufficient facts to plausibly suggest, at a minimum, any race-based discriminatory intent; however, the facts already pleaded border on the fantastic. Accordingly, it appears to the Court that "affording [Davis] leave to amend would in all likelihood be futile." *Cf. Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993). The Court therefore recommends dismissal with prejudice.[130]

## IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the County Defendants' Motion to Dismiss under Rule 12(b)(1) and (6) (ECF No. 7) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against the County Defendants be **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 31st day of August 2026.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

[130] *Cf. Perez-Merino v. City of Dallas*, No. 25-10375, 2025 WL 3143647, at *1 (5th Cir. Nov. 10, 2025) (holding that the district court did not err by dismissing a *pro se* plaintiff's complaint with prejudice and without providing an opportunity to amend because the magistrate judge's report "provided notice of the defects in the complaint, and [the plaintiff] had an opportunity to respond and cure the defects within the time for objecting to the report").

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**